

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00532-CR

THOMAS JEFFERSON
SMALLWOOD, JR.

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1343309R

----------

## OPINION ON APPELLANT'S MOTION FOR REHEARING

----------

After considering Appellant's motion for rehearing, we deny the motion, but we withdraw our opinion and judgment of April 30, 2015, and substitute the following.

A jury convicted Appellant Thomas Jefferson Smallwood Jr. of six counts of aggravated sexual assault of a child under seventeen years of age and three counts of sexual assault of a child under seventeen years of age, all charged in a

single indictment, and assessed his punishment at fifty years' confinement on each aggravated sexual assault count and twenty years' confinement on each sexual assault count. The trial court sentenced him accordingly, ordering the sentences to be served concurrently. Appellant brings five issues on appeal, challenging the sufficiency of the evidence to show the aggravating element for the six convictions of aggravated sexual assault of a child (counts one through four, eight, and nine) and contending that the State misrepresented the law during voir dire and that the trial court abused its discretion by excluding evidence of the complainant's prior rape accusation against a neighbor and the testimony of two other witnesses. Because the evidence is sufficient to support the jury's verdict and because the trial court committed no reversible error, we affirm the trial court's judgments.

**Brief Facts**

Appellant and Complainant's mother (Mother) had been a couple, had shared a home with Complainant and her brother, and were the parents of twin boys, Complainant's younger half-brothers. Appellant and Mother parted ways and went through a custody battle over the twins. On July, 4, 2012, Complainant, who was fourteen years old at the time, was at Appellant's home with her twin brothers. Complainant and Mother were not getting along around this time. Appellant told Complainant that he wanted to put Mother in a hole and hire some Mexican assassins to hurt her. In the same conversation, Appellant suggested

2

that Complainant have sex with him to make Mother mad, but Complainant refused his offer.

Later that same month, Complainant, along with her twin brothers, visited Appellant's parents in El Paso. During this trip, Complainant received messages from someone who identified himself as "Jayylo" through Kik, an application on her cell phone. Jayylo sent pictures of his penis to her. She responded by "sen[ding] inappropriate pictures of [her] boobs." She never gave Jayylo her home address or her real name. Jayylo continued to send more pictures of himself to her. When Complainant threatened to stop sending Jayylo pictures, he threatened to send the photos she had sent him to her school and to the mailboxes of Mother and her neighbors. Complainant noticed that the background of one of the photos he sent her resembled a portion of Appellant's house. Complainant was then suspicious that Appellant was Jayylo.

She confronted Appellant, but he denied having a Kik account. About an hour later, Appellant called Complainant back and asked her why he had pictures of her boobs in his mailbox. Complainant started crying and told him what had happened with Jayylo and that he had threatened her. Complainant also told Appellant's mother why she was crying, and Appellant got mad at Complainant for telling his mother. Complainant turned fifteen years old while she was in El Paso.

When Complainant returned home from El Paso, she began receiving text messages from Jayylo sent directly to her cell phone number. Complainant

3

noticed that the first six digits of Jayylo's phone number were the same as Appellant's cell phone number. Jayylo told her that he got her phone number from one of her friends, which Complainant knew not to be true. Whenever Complainant asked Jayylo who he really was, he would change his story of how Complainant was supposed to know him and how old he was. Jayylo texted Complainant almost every day at different times of the day. But she could never get a response when she called him.

Jayylo continued threatening Complainant and demanded that she send him more photos, have sex with Appellant, videotape it, and send the video to Jayylo. Complainant refused. Jayylo put one of the photos Complainant had sent him on a Facebook page he had created and threatened to add all of her friends to that page. Appellant told Complainant that Jayylo was also contacting him, but she never saw any of the messages that Appellant claimed to have received.

Appellant and Complainant spoke about the situation and decided to acquiesce to Jayylo's demands. Complainant and Appellant had sexual intercourse in Appellant's house while Complainant's twin brothers were asleep. Following Jayylo's demands, Appellant and Complainant continued their sexual relationship. They had sexual intercourse "eight to eleven times[,] [m]aybe more," from August 2012 to November 2012. These sexual encounters would occur at either Appellant's or Complainant's home.

Complainant testified that she texted Jayylo that it was getting harder for her to keep these incidents a secret, and shortly after she sent this text, Appellant

4

called her and told her that they did not "have to do it anymore." Appellant then told Complainant a story about

> a girl who was babysitting this guy's kids, and he ended up raping her. And then she went to court, and then he pretended to be somebody that he wasn't and hit her up on Facebook and that they met up thinking it was somebody else, and he killed her.

This story scared Complainant. At trial, she testified that Appellant knew people from Mexico who were in the Mexican Mafia. Although Complainant testified that Appellant never specifically threatened her, she also testified that he made it clear that if he could hurt Mother, he could hurt Complainant too. In December 2012, Complainant made an outcry to Mother's friend. Shortly afterward, the decision to call the police was made. Appellant pled not guilty to all counts of an eighteen-count indictment alleging that he had committed sexual assault and aggravated sexual assault on various dates against Complainant.

Outside the presence of the jury, in an in-camera hearing, Appellant presented evidence from Ricky May. May lived in Complainant's neighborhood around 2008 to 2009. He testified that when he was eighteen years old, Complainant would contact him "through phone [and] text messaging, trying to get [him] to have sexual intercourse with her" because she was "horny." May refused Complainant's offer, but he heard that Complainant had told people in their neighborhood that he had raped her, which he denied. May was never charged with or arrested for rape. The State objected to May's testimony on hearsay grounds.

5

THE COURT: Response?

[PROSECUTOR]: Once again, Your Honor, this is an opinion based upon hearsay. There's no proof that she ever said these things. And this is the type of reputation and opinion evidence that is, I believe, prohibited under 412 as is relating to sexual conduct and it's not fitting in one of the categories that allows for past behavior to be admissible.

The trial court sustained the State's objection, and May was not permitted to testify in front of the jury.

Appellant also offered testimony from Jeannie Redmon outside the presence of the jury. Redmon testified that she had known Complainant for "[a]pproximately seven to eight years." Redmon testified that Complainant was "untruthful" because (1) she took items that belonged to Redmon's daughter, told Redmon that Redmon's daughter had given her the items when in fact, Redmon's daughter had not, and instructed Redmon's daughter to similarly lie; (2) she would tell Redmon and her daughter that she was dating people whom she was not dating; (3) she had said that a boy across the street had raped her; and (4) she lied about giving out her phone number to boys at a waterpark when Redmon asked her if she had done so. Redmon also testified that she thought her daughter and Complainant had gone to pornographic websites on Redmon's home computer. Appellant offered Redmon's testimony as her opinion on Complainant's truthfulness. The State objected to Redmon's testimony:

We'll object under rule 608 and 609, also 404. I think if this witness knew [Complainant] presently, we would be legally okay with her opinion that she's untruthful, but I think four years ago is a little bit too

6

remote.  And certainly, even if that was allowed, the rules, specifically 608(b)[,] disallow specific instances of conduct.  So we would object to any specific instances.

Additionally, it sounds like almost all of this is hearsay and, except for perhaps the opinion as to truthfulness.  But the porn use, I don't think we can say that this witness knows with her own personal knowledge that it was definitely [Complainant].  I think perhaps she's basing that off of what her daughter has told her.  And the same with the false claim of rape, she's admitted on cross she really does not know what happened.

The trial court sustained the State's objections, and Redmon was not permitted to testify in front of the jury.

Appellant also presented evidence from Denise Brown outside the presence of the jury.  Brown testified that Complainant was friends with her daughter and that she knew Complainant in 2009 and 2010.  Brown testified that Complainant was untruthful because Complainant (1) spread rumors that Brown's daughter was pregnant and (2) took some fingernail polish belonging to Brown's daughter without permission.  Brown also testified that Complainant was flirtatious with boys and opined that Complainant was promiscuous. Complainant's friendship with Brown's daughter ended when Brown's daughter began dating a boy whom Complainant had previously dated, and Complainant began calling Brown's daughter a "slut."  The State objected to Brown's testimony:

The State would object as to . . . this witness . . . having no personal knowledge of the things that she has referenced as far as her basis for determining this—[Complainant's] credibility.  She's basing it upon hearsay.  So we would object under 608.

7

Also, as far as going into specific instances of conduct, she doesn't—she did not personally observe them or have personal knowledge as to them.

Also, we'd object under 404, 403 as to her general characterization of [Complainant's being] boy crazy, promiscuous. . . . [S]he has clearly demonstrated her own bias towards [Complainant] where she does not apply the standard to her own daughter as she does for [Complainant], even though they're engaged in the same conduct.

The trial court sustained the State's rule 608 objection.

**Sufficiency of the Evidence**

In his first issue, Appellant argues that the evidence is insufficient to support the jury's determination that, during the alleged aggravated sexual assaults, he, "by acts or words placed [Complainant] in fear that death or serious bodily injury would be imminently inflicted on [her] or [her mother]," as alleged in counts one through four, eight, and nine.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to

---

[1]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[2]

The trier of fact is the sole judge of the weight and credibility of the evidence.[3] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[4] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[5] We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[6]

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.[7]

---

[2] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

[3] *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170.

[4] *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[5] *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[6] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

[7] *Dobbs*, 434 S.W.3d at 170; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Complainant testified that Appellant had told her (1) that he knew people in Mexico associated with the Mexican mafia and that they would kill her and her mother without the killings being traced back to him and (2) a story about a man who raped his babysitter and killed her after she told someone about the rape. The outcry witness testified that Complainant had reported the Mexican mafia threat to her and that Complainant had also told her that Appellant had threatened to slit Complainant's throat and leave her in a ditch somewhere.

Appellant relies on *Blount v. State*[8] and its progeny to argue that the threats were not imminent because they were conditional. The *Blount* court found insufficient the attackers' telling the victim that if she told, they would come back and kill her because the threat was conditional.[9] As the State points out, *Blount* relied on a former version of the statute that required not only that the threat was made but that it "compelled submission to the rape."[10] That language was removed from the statute when it was later amended, and consequently, as the State argues, it does not apply to this offense.[11]

---

[8]542 S.W.2d 164 (Tex. Crim. App. 1976).

[9]*Id.* at 165–66.

[10]*Id.* at 165 (quotation marks omitted).

[11]*See* Tex. Penal Code Ann. § 22.021 (West Supp. 2014) (providing elements of aggravated sexual assault); *Nichols v. State*, 692 S.W.2d 178, 180 (Tex. App.—Waco 1985, pet. ref'd) (discussing the 1981 statutory amendment removing the requirement of compelled submission).

Further, a child cannot consent to sexual contact or intercourse.[12]  There is no element of compulsion required to be proved in the aggravated sexual assault or sexual assault of a child.[13]  Because Complainant was a child and not competent to consent to sexual conduct, the threat went only to the aggravating element that elevated the offense to a higher grade of felony and therefore a higher range of punishment.[14]

The unique facts of this case require us to look at the threats as continuing during the commission of the assaults over an extended period of time. Complainant said in her outcry and repeated at trial that Appellant—who for most of the period of the offenses was a person lurking in the background of her life— made various death threats to keep her participating silently in the sexual relationship.  She understood these threats to be continuing threats of imminent harm at any time.[15]  The record supports that interpretation under the unique facts of this case.  We therefore overrule Appellant's first issue.

---

[12]*In re B.W.*, 313 S.W.3d 818, 823–24 (Tex. 2010).

[13]*See id.*; *see also* Tex. Penal Code Ann. § 22.011(a)(2) (West 2011), § 22.021(a)(1)(B), (2).

[14]*Compare* Tex. Penal Code Ann. § 22.011(f) (West 2011) (providing that sexual assault is a second-degree felony), *and id.* § 12.33 (providing range of punishment for second-degree felonies), *with id.* § 22.021(a)(2)(A)(ii), (e) (providing that aggravated assault as alleged in this case is a first-degree felony), *and id.* § 12.32 (providing range of punishment for first-degree felonies).

[15]*See, e.g., Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (discussing the continuing nature of an abduction and holding that because a

**Alleged Misstatement of the Law in Voir Dire**

In his second issue, Appellant argues that the State misstated the law during voir dire and that this misstatement violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution and sections ten and nineteen of article I of the Texas Constitution. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[16] Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[17] We have carefully examined those portions of the record to which Appellant directs us concerning what he describes as misrepresentations of the law to the jury panel during voir dire. At no point did Appellant object or otherwise call his complaint to the attention of the trial court. Consequently, he did not preserve this issue for appellate review. We overrule Appellant's second issue.

---

witness testified that he saw Curry with a gun that night, "the jury could have believed that Curry had that gun and used it during the course of the abduction to prevent [the complainant's] liberation" and "the jury was free to disbelieve [the complainant's] testimony that Curry did not have a gun and that Curry did not threaten him").

[16]Tex. R. App. P. 33.1(a)(1); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd).

[17]Tex. R. App. P. 33.1(a)(2); *Everitt*, 407 S.W.3d at 263.

12

**Excluded Evidence About Complainant**

In his third, fourth, and fifth issues, Appellant argues that the trial court reversibly erred by refusing to allow him to present the testimony of May, Redmon, and Brown that Complainant had made a prior false rape allegation against a neighbor and that she was untruthful.  Judge Cochran has explained,

> Trials involving sexual assault may raise particular evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive, issue. Sexual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence.  Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases.  And Texas law, as well as the federal constitution, requires great latitude when the evidence deals with a witness's specific bias, motive, or interest to testify in a particular fashion.
>
> But, as the Supreme Court noted in *Davis v. Alaska*, there is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand."  Thus, under *Davis*, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."  However, as Justice Stewart noted in concurrence, the Court neither held nor suggested that the Constitution confers a right to impeach the general credibility of a witness through otherwise prohibited modes of cross-examination. Thus, the *Davis* Court did not hold that a defendant has an absolute constitutional right to impeach the general credibility of a witness in any fashion that he chooses.  But the constitution is offended if the state evidentiary rule would prohibit him from cross-examining a

13

witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory.[18]

A witness's credibility may be attacked in three ways:  opinion or reputation for general truthfulness or untruthfulness and cross-examination on specific instances of conduct that establish bias, self-interest, or motive for testifying as he or she did.[19]  Opinion evidence is not the same as reputation evidence.[20]  As this court has explained,

> Reputation witnesses' testimony must be based on discussion with others about the subject, or on hearing others discuss the person's reputation, and not just on personal knowledge.  Rule 405 requires only "substantial familiarity" with the reputation of the accused.[21]

Reputation evidence, then, must necessarily be grounded in hearsay.[22]  An objection that the testimony of reputation evidence is hearsay and not based on personal knowledge thus will not lie.[23]  Opinion testimony is governed by rule of evidence 701 and must be based on personal observation.[24]

---

[18]*Hammer v. State*, 296 S.W.3d 555, 561–63 (Tex. Crim. App. 2009) (footnotes omitted).

[19]Tex. R. Evid. 405, 608.

[20]*See* Tex. R. Evid. 405, 701.

[21]*Ferrell v. State*, 968 S.W.2d 471, 474 (Tex. App.—Fort Worth 1998, pet. ref'd) (citations omitted).

[22]*See id.*; s*ee also* Tex. R. Evid. 405.

[23]*See* Tex. R. Evid. 405; *Ferrell*, 968 S.W.2d at 474.

[24]Tex. R. Evid. 701.

Within this general framework, Judge Cochran, speaking for the unanimous *Hammer* court, has explained why Texas, unlike many other states, does not allow a defendant in a sexual assault case to impeach the complainant with evidence of prior false accusations:

> The theory for admitting prior false accusations of rape in a sex-offense prosecution is frequently analogized to Aesop's story of "The Boy Who Cried Wolf." A past false accusation makes it more likely that the witness lacks credibility and thus should not be believed concerning this accusation. But in Aesop's fable, there really was a wolf, and it killed the sheep. The moral of that story was "Nobody believes a liar . . . even when he is telling the truth." A criminal trial, however, is designed to find the truth about a specific incident, not to decide whether someone has lied in the past about the presence of wolves or about being raped. Prior false allegations of rape do not tend to prove or disprove any of the elements of the charged sexual offense.

> Therefore, Texas, unlike some jurisdictions, has not created a per se exception to Rule 608(b)'s general prohibition against impeachment with specific instances of conduct to admit evidence of the complainant's prior false allegations of abuse or molestation. The inferential chain of logic that is barred by Rule 608(b) is this:

> > The witness lied to his employer (or did some specific act of dishonesty)

> > That specific conduct proves dishonest character;

> > Therefore, the witness is generally dishonest and should not be believed in this case.

> Applied to prior false accusations, the barred evidentiary chain is this:

> > Complainant made a prior false accusation;

> > That specific conduct proves dishonest character;

> > Therefore, the complainant is generally dishonest and should not be believed in this case.

15

This is precisely the prohibited propensity chain of logic—"Once a thief, always a thief," "Once a liar, always a liar"—that underlies both Rules 404(b) and 608(b). A sexual assault complainant is not a volunteer for an exercise in character assassination. Several federal courts have held that exclusion of this evidence, offered to attack the victim's general credibility, does not violate the Confrontation Clause.

If, however, the cross-examiner offers evidence of a prior false accusation of sexual activity for some purpose other than a propensity attack upon the witness's general character for truthfulness, it may well be admissible under our state evidentiary rules.

For example, in *Billodeau v. State*, we held that the trial court should have admitted evidence that the child complainant in that aggravated sexual assault prosecution had made threats to falsely accuse two neighbors of sexual molestation. We held that such evidence supported the defensive theory that the complainant's motive in accusing the defendant of sexual molestation was "rage and anger" when he was thwarted. Evidence of threats to accuse others of sexual molestation when he displayed "rage and anger" at being thwarted is some evidence of a common motive for accusing the defendant of sexual molestation. The chain of logic is as follows:

The victim makes false accusations in certain circumstances and for certain reasons;

Those circumstances and reasons are present in this case;

Therefore, the victim made a false accusation in this case.

One might even call this modus operandi evidence admissible under Rule 404(b). Evidence of other acts or wrongs may be admissible under Rule 404(b) to prove such matters as motive, intent, scheme, or any other relevant purpose except conduct in conformity with bad character. Even "the doctrine of chances" has been invoked as a possible basis for admitting evidence of a victim's prior false accusation of rape. Similarly, evidence of a victim's prior sexual activity may be admissible under Rule 412, the Texas Rape Shield Law, when offered to establish the victim's motive or bias against the defendant.

16

In sum, several different state evidentiary rules permit the use of prior false accusations when offered to show the witness's bias or motive or for some other relevant, noncharacter purpose. The Confrontation Clause mandate of *Davis v. Alaska* is not inconsistent with Texas evidence law. Thus, compliance with a rule of evidence will, in most instances, avoid a constitutional question concerning the admissibility of such evidence.[25]

We now examine the case at bar.

### Prior Rape

Appellant argues that the trial court abused its discretion by excluding May's testimony that he had heard a rumor that Complainant was telling people that he had sexually assaulted her and Redmon's testimony pertaining to the alleged incident. Appellant offered May's testimony under rule of evidence 404(b).[26] While Appellant now argues that the trial court's ruling abridged certain of his constitutional rights, at trial he spoke only of credibility and Rule 404(b). Appellant's complaints at trial do not conform to his constitutional complaints on appeal; we therefore do not address his constitutional complaints.[27]

Additionally, May's testimony dealt with rumors on the street; it did not constitute testimony of Complainant's reputation for truthfulness, nor were his claims that he had heard that she was spreading rumors in any way

---

[25] *Hammer*, 296 S.W.3d at 564–66 (footnotes omitted).

[26] Tex. R. Evid. 404(b).

[27] *See* Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).

17

substantiated to provide a basis for an opinion that she was not worthy of belief under oath. And to the extent that his testimony was intended to be evidence of prior false accusations of sexual assault, such testimony is not admissible for the purpose of showing her character conformity or propensity to lie.[28]

Although Appellant also argues that the evidence was admissible to show motive and modus operandi, May candidly admitted that Complainant never accused him to his face of raping her. His belief that she had accused him was based on rumors that he had heard. The record does not establish confirmation of May's belief that she falsely accused him of rape. Nor do the rumors he heard suggest a motive for falsely accusing Appellant or a modus operandi. May said that Complainant would ask him to have sex with her, and he refused. But we cannot discern how the rumors he heard that she was accusing him of rape were ever verified. The record before this court therefore does not establish the admissibility of this evidence of purported false accusations of rape under rule 404(b).

At trial, Appellant explained in seeking admission of the false accusation testimony, "the false claim of rape is going to credibility." We hold that the rumors of false rape accusations were not admissible, and based on the record before us, that the trial court did not abuse its discretion in denying Appellant's

---

[28] *See Hammer*, 296 S.W.3d at 564.

18

request to present this evidence before the jury.  We overrule Appellant's third issue.

**Redmon's and Brown's Opinion Testimony**

In his fourth and fifth issues, Appellant complains of the exclusion of the testimony of Redmon and Brown concerning their opinions of Complainant's credibility.  As we understand the record, Appellant appears to have offered these opinions by having the women explain specific acts that they suspected had occurred and speculate on others.  He did not offer their testimony on any constitutional basis.  We therefore do not address the constitutional arguments he raises on appeal.[29]

Redmon's testimony was based on her belief that Complainant had lied and had told Redmon's daughter to lie about having given Complainant things that Complainant had stolen from Redmon's daughter.  Redmon also believed that Complainant had lied to her and to her daughter about dating, smoking marijuana, and being raped.  Appellant explained to the trial court that he was offering Redmon's testimony as "possible opinion testimony on truthfulness."

Brown believed that Complainant had spread untruthful rumors about her daughter and that she had stolen her daughter's nail polish.  We are not clear on the legal basis for which Appellant offered this evidence, other than as an opinion

---

[29]*See* Tex. R. App. P. 33.1(a)(1); *Lovill*, 319 S.W.3d at 691–92.

19

of Complainant's truthfulness.  Judge Keasler has explained for the Texas Court

of Criminal Appeals,

> [A] less common notion of error preservation comes into play in this case, although certainly not a novel one.  Professors Goode, Wellborn and Sharlot refer to it as "party responsibility."  They explain it this way:
>
>> To the question, which party has the responsibility regarding any particular matter, it is infallibly accurate to answer with another question:  which party is complaining now on appeal?  This is because in a real sense both parties are always responsible for the application of any evidence rule to any evidence.  Whichever party complains on appeal about the trial judge's action must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule in question and its precise and proper application to the evidence in question.
>
> The basis for party responsibility is, among other things, Appellate Rule 33.1.  It provides that as a prerequisite to presenting a complaint for appellate review, the record must show that the party "stated the grounds for the ruling that (he) sought from the trial court with sufficient specificity to make the trial court aware of the complaint."  So it is not enough to tell the judge that evidence is admissible.  The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible.
>
> We recently discussed this notion in *Martinez v. State*.  There, the defendant moved to suppress oral statements due to the State's failure to comply with Art. 20.17.  The State argued for the first time on appeal that Art. 20.17 did not apply.  We concluded that the State forfeited this argument by failing to bring it to the trial judge's attention.  We explained that "both Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103 are 'judge-protecting' rules of error preservation.  The basic principle of both rules is that of 'party responsibility.'"  We recognized that "the party complaining on appeal (whether it be the State or the defendant) about a trial court's admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question

and its precise and proper application to the evidence in question." The issue, we said, "is not whether the appealing party is the State or the defendant or whether the trial court's ruling is legally 'correct' in every sense, but whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal."

Similarly, in *Willover v. State*, the defendant sought to admit two videotaped interviews of the victim. At trial,

> it (was) clear that, although (the defendant) did not actually recite the specific rule of evidence he was relying upon, (he) sought to admit the videotapes for impeachment purposes. (He) did not argue, nor was there any discussion at trial, that the tapes were not hearsay or that the videotapes were admissible under any exception to the hearsay rule other than Article 38.071 or for impeachment purposes.

On appeal, the defendant argued for the first time that the videotapes were not hearsay. We relied on the notion of "party responsibility" to reject this argument because "(i)n order to have evidence admitted under a hearsay exception, the proponent of the evidence must specify which exception he is relying upon." It was up to the defendant, we said, and "not the trial court, to specify which exception to the hearsay rule he was relying upon or to specify how the evidence was not hearsay."

In some cases, we have applied the "party responsibility" theory without using those precise words. In *Clark v. State*, the State presented the testimony of Dr. James Grigson that the defendant would be a future danger. The defendant sought at trial to introduce a letter and accompanying report which listed eleven individuals convicted of capital murder whose sentences had later been commuted or reduced. In several of those cases, Dr. Grigson had predicted that the individual would be a future danger. The trial court refused to admit the evidence.

On appeal, the defendant argued that the excluded evidence was admissible to impeach Dr. Grigson and show that his prior future dangerousness predictions had turned out to be incorrect. But the defendant had not articulated this basis for admission at trial. At trial, he had argued the evidence was admissible to impeach

21

statements that Dr. Grigson had made in Lubbock County. The State had objected that the impeachment went to a collateral matter, and the trial judge had agreed.

We rejected the defendant's argument on appeal because he "did not clearly articulate" that he wanted to admit the evidence to demonstrate Grigson's past mistakes in predicting future dangerousness. We said that the trial judge "never had the opportunity to rule upon (the defendant's) appellate rationale." Since the defendant "did not sufficiently clearly expressly offer the evidence for the purpose which he now claims on appeal," that argument could not be raised on appeal.

Finally, in *Jones v. State*, the defendant sought at trial to admit the grand jury testimony of a witness who asserted her Fifth Amendment privilege against self-incrimination and refused to testify. The State objected, claiming hearsay. We concluded that the defendant failed to preserve error because he never specified which portions of the witness's testimony he wanted to admit into evidence. We said:

> The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection. In this case, because the trial court chose to exclude the evidence, appellant is the party adversely affected by his own default. Because appellant failed to specify which portion of the transcript he intended to introduce into evidence, the court was presented with a proffer containing both admissible and inadmissible evidence. When evidence which is partially admissible and partially inadmissible is excluded, a party may not complain upon appeal unless the admissible evidence was specifically offered.

22

Application

In this case, Reyna argued to the trial judge that the evidence should be admitted for "credibility." He said that he was "not offering it to prove the truth of the matter asserted" and "not offering it to go into her sexuality." Instead, he argued, "I'm offering it to demonstrate that as to prior sexual activities, that she made allegations that there were prior sexual allegations, and recanted."

Reyna did not cite to any rules of evidence, cases, or constitutional provisions. Reyna's references to "the truth of the matter asserted" reflect that he was arguing that the evidence was not hearsay under Evidence Rule 801(d). His claim that he was not offering it "to go into her sexuality" reflects his argument that the evidence should not be excluded under Evidence Rule 412(b). These arguments are both based on the Rules of Evidence. Reyna's reference to "credibility" could be a reference to either the Rules of Evidence or the Confrontation Clause.

Reyna told the trial judge that the purpose of admitting the evidence was to attack the victim's credibility, but he did not provide the basis for admitting the evidence. He could have been relying on the Rules of Evidence or the Confrontation Clause. It was up to the judge to discern some basis for admitting the evidence.

We have said that "(t)he purpose of requiring (an) objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." When a defendant's objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to preserve error. An objection on hearsay does not preserve error on Confrontation Clause grounds.

Although this case involves a proffer of evidence rather than an objection, the same rationale applies. Reyna did not argue that the Confrontation Clause demanded admission of the evidence. Reyna's arguments for admitting the evidence could refer to either the Rules of Evidence or the Confrontation Clause. His arguments about hearsay did not put the trial judge on notice that he was making a Confrontation Clause argument. Because Reyna "did not clearly articulate" that the Confrontation Clause demanded admission of the evidence, the trial judge "never had the opportunity

to rule upon" this rationale. As the losing party, Reyna must "suffer on appeal the consequences of his insufficiently specific offer." Reyna did not do "everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question."[30]

In the case now before this court, Appellant offered the evidence on the vague basis of "possible" opinion testimony. He did not sustain his burden of explaining to the trial court on the record, and by extension to us, why Redmon's and Brown's testimony was admissible—whether under an evidentiary rule or statute, as an exception to an evidentiary rule or statute, or under a constitutional provision. We therefore overrule Appellant's fourth and fifth issues.

**Conclusion**

Having overruled Appellant's five issues on appeal, we affirm the trial court's judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: August 6, 2015

---

[30] *Reyna v. State*, 168 S.W.3d 173, 176–79 (Tex. Crim. App. 2005) (citations omitted).