

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00148-CR

_____

LANE ANTHONY JORDAN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 1
Tarrant County, Texas
Trial Court No. 1571326

---

Before Gabriel, Kerr, and Bassel, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Lane Anthony Jordan appeals from his conviction for misdemeanor assault causing bodily injury to his girlfriend Nicole Stokes, arising from a physical fight between the two. He first argues that the trial court abused its discretion and violated his confrontation rights by excluding credibility evidence showing that (1) Stokes was afraid of involvement by the Department of Family and Protective Services (DFPS) because her children were in the home during the assault, (2) a responding police officer found marijuana on Stokes's dresser and allowed her to flush it, and (3) Stokes was under the influence of marijuana the day of the assault. In his second issue, Jordan contends that the trial court abused its discretion by allowing one of the responding officers to testify regarding his opinion as to Jordan's truthfulness (invading the jury's province) and whether a crime had been committed (improperly bolstering Stokes's later trial testimony). We conclude that the majority of Jordan's complaints were not preserved for our review and that even if preserved, Jordan failed to show an abuse of the trial court's discretion.

## I. BACKGROUND

Jordan and Stokes were dating; Jordan would occasionally stay in Stokes's apartment with Stokes and her three young children. One night, Stokes returned home to find that Jordan had been drinking. Jordan was angry that Stokes had not been returning his calls, and the two began to argue. Stokes pushed Jordan when he would not let her walk out of the room. Stokes stated that Jordan began hitting her

2

face with his fists, causing her to black out. When she roused, the two fought over her phone, and Stokes kicked, hit, and pushed Jordan to get away. Jordan averred that Stokes started the fight and that when he tried to leave, Stokes pushed and hit him in the mouth.

Both Stokes and Jordan called 911. When the police arrived, Jordan denied hitting Stokes. Jordan's lip was bleeding; Stokes's face was injured and swollen, and she had defensive wounds on her hands. Stokes eventually was diagnosed with a concussion. While questioning Stokes, a responding officer (Corporal D. Scudder) apparently found marijuana in Stokes's dresser and told her to flush it down the toilet, which she did. This exchange was captured by Scudder's body-camera video. Also shown on the video was Stokes's statement that she could not "risk [her] kids," causing Scudder to respond that she would have to make a "report" to DFPS.

At trial, Jordan admitted that he had "popped" Stokes in the mouth but averred that he was defending himself. Stokes testified that Jordan hit her first. The other responding officer, Officer Thomas Gilbert, testified that based on his experience and his investigation of the incident, he believed Jordan was not truthful when he contended he was defending himself from Stokes. The jury found Jordan guilty of misdemeanor assault causing bodily injury to a family member, to a household member, or to a person with whom he had a dating relationship. The trial court assessed his sentence at 365 days' confinement, probated for 24 months, with an $800 fine. *See* Tex. Penal Code Ann. §§ 12.21, 22.01(a)(1), (b).

## II.  CREDIBILITY EVIDENCE

In his first issue, Jordan asserts that the trial court abused its discretion by excluding credibility evidence showing that Stokes had a reason to "exaggerate her story to ensure [Jordan] was taken to jail instead of her" because (1) her children were in the home, (2) Scudder had found marijuana on Stokes's dresser, and (3) Stokes had been under the influence of marijuana during the assault.  He contends that these exclusions weakened his self-defense claim and limited his cross-examination, thereby violating his right to confrontation.  We review the exclusion of defensive evidence for an abuse of discretion, but review any unsuccessful confrontation objections de novo.  *See Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Wells v. State*, 558 S.W.3d 661, 666–67 (Tex. App.—Fort Worth 2017, pet. ref'd).

During trial and outside the presence of the jury, Jordan argued that if the State admitted Scudder's body-camera video, he wanted to be able to question Stokes about her fear of DFPS involvement and about whether she had mixed alcohol with her antidepressants the day of the fight, making her "aggressive."  The trial court noted that the portion of the video the State indicated it would seek to admit—the first seven minutes—did not contain information about mixing alcohol with antidepressants or DFPS involvement.[1]  The trial court then stated that if those two

---

[1]The first seven minutes showed Scudder and Gilbert arriving at the scene, Gilbert questioning Jordan, Stokes's description of the assault, and Scudder's statements to Stokes about the severity of her injuries.

4

areas of questioning "become[] relevant" during Stokes's cross-examination, "we can take that up at that time": "So we'll take your requests up later when it becomes something you need - - feel like you need to get into." Jordan did not object.

During Scudder's later testimony, the State offered (and the trial court admitted over no objection) the first seven minutes of the body-camera video. Jordan asked Scudder if it was possible that Stokes was "trying to bargain with" Scudder—placing the blame on Jordan—to prevent Scudder from contacting DFPS. The State's relevance objection was sustained. But Scudder did testify in response to Jordan's questioning that when children are present at an alleged assault, police policy requires officers to contact DFPS.

When Stokes testified, she stated that she had not had any alcohol the day of the assault. On cross-examination, Stokes again denied that she had consumed any alcohol that day. Jordan then attempted to question Stokes about the marijuana found in her bedroom, and the State objected. Jordan asserted that he should be allowed to ask about the presence and destruction of the marijuana "to show [Stokes's] potential bias." The trial court sustained the State's objection, noting that the evidence was not relevant "to the question at hand" because "there was [no] objection that I heard while the jury was out that [Stokes] was under the influence of the marijuana." The trial court did, however, allow Jordan to probe whether Stokes had been "under the influence of anything" or "other medicine." Stokes testified in

5

response to Jordan's questions that the only substance she had taken that day was her antidepressant:

> Q.   In addition to potentially drinking alcohol, what other substances were you on that day?
>
> A.  None, sir.
>
> Q.  You were taking antidepressants at the time.
>
> A.  Regular medication, yes, sir.
>
> Q.  Had you taken it that day?
>
> A.  Yes.
>
> Q.  What were you taking?
>
> A.  Lexapro.
>
> Q.  Lexapro.  Okay.  What does it say in regards to mixing Lexapro and alcohol?
>
> [State's objection overruled.]
>
> [A.]  I haven't had any issues.  As long as it's not in excess with drinking, I'm allowed a glass of wine.
>
> Q.  . . . So you're telling the jury that you can mix antidepressants and alcohol?
>
> A.  With the Lexapro, as long as it is not in excess, I'm allowed a glass of wine.
>
> Q.  And you were taking your Lexapro that day?
>
> A.  Yes, sir.

On redirect, Stokes again testified that she had consumed no alcohol the day of the fight. Jordan did not specifically ask Stokes if she had smoked marijuana that day, even though the trial court had granted permission to do so. Jordan also did not attempt to question Stokes about her fear of DFPS involvement.

The State argues that Jordan failed to preserve his appellate confrontation arguments for our review by failing to raise this ground in the trial court. Indeed, even constitutional arguments such as a violation of the Confrontation Clause must be sufficiently raised in the trial court to preserve the issue for our review. *See Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018); *Smallwood v. State*, 471 S.W.3d 601, 614 (Tex. App.—Fort Worth 2015, pet. ref'd) (op. on reh'g); *see also* Tex. R. App. P. 33.1(a)(1)(A). At no point did Jordan argue that the exclusion of the marijuana and DFPS evidence violated his constitutional confrontation rights. Although he did assert that such evidence would have shown Stokes's bias, this legal basis was insufficiently specific to inform the trial court that his objection was founded on the constitutional right to confront Stokes. *See Golliday*, 560 S.W.3d at 670–71; *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *Smallwood*, 471 S.W.3d at 614. Accordingly, his admissibility arguments based on his constitutional confrontation rights were not preserved for our review.

To the extent Jordan's appellate arguments are not based on the Confrontation Clause but on the Rules of Evidence, his contentions that he should have been allowed to show that Stokes feared DFPS involvement and to ask Stokes if she had

7

used marijuana the day of the assault are similarly not preserved. Other than obliquely asking Stokes whether she had used "substances" other than alcohol that day, which Stokes denied, Jordan did not question Stokes about her marijuana use. And although Jordan unsuccessfully attempted to question Scudder about Stokes's possible fear of DFPS involvement, he did not try to question Stokes on the issue. Further, the jury heard that police policy was to contact DFPS if children were present during an assault. Jordan's evidentiary arguments were, therefore, procedurally defaulted. *See* Tex. R. App. P. 33.1(a)(1), (2) (requiring, to preserve error, that record show the complaint was made to the trial court and the trial court ruled on the request); *Templin v. State*, No. 02-17-00229-CR, 2019 WL 311145, at *3 (Tex. App.—Fort Worth Jan. 24, 2019, no pet.) (mem. op., not designated for publication) ("[T]he same or similar evidence was admitted elsewhere over no objection; thus, Templin failed to preserve error on this issue . . . ."); *Loredo v. State*, 32 S.W.3d 348, 351 (Tex. App.—Waco 2000, pet. ref'd) (holding complaint regarding exclusion of testimony on cross-examination not preserved because "the trial court was never asked to rule on the admissibility of the prior allegation as impeachment to show motive or bias for testifying falsely").

And Jordan has failed to show that the trial court abused its discretion under the Rules of Evidence by refusing to allow him to question Stokes about whether she had marijuana in her bedroom. When Jordan attempted to question Stokes about the found marijuana, the trial court found that this line of inquiry was not relevant.

8

Indeed, no evidence at that point indicated that Stokes had been under the influence of marijuana. As such, any evidence that Stokes possessed marijuana was not relevant to a fact of consequence and would have been impermissible character evidence. *See* Tex. R. Evid. 401, 403, 608(b); *Norrid v. State*, 925 S.W.2d 342, 346–47 (Tex. App.— Fort Worth 1996, no pet.).

We overrule Jordan's first issue.

### III. LAY OPINION

Jordan next asserts that the trial court abused its discretion by allowing Gilbert to testify that he believed Jordan's claim of self-defense was not "truthful or honest." *See* Tex. R. Evid. 701; *Taylor v. State*, 774 S.W.2d 31, 34 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd). As Jordan asserted at trial, he argues this "truthfulness" testimony invaded the province of the jury to determine credibility.

But Jordan has failed to preserve this error for our review. Immediately before the State asked Gilbert whether he believed Jordan was truthful or honest about his claim of self-defense, Gilbert testified that he did not "believe" self-defense was involved:

> Q. Did you [Gilbert] make a determination as . . . to who was the primary aggressor?
>
> A. I did.
>
> Q. Who was that?
>
> A. It would be [Jordan].

9

. . . .

Q. At any time during your interactions with [Jordan] on November 20th, 2018, did he admit to doing anything more than defending himself?

A. No.

Q. Did he ever admit to striking Ms. Stokes?

A. No.

Q. Now, [Jordan] was also checked out by EMS?

A. Yes.

. . . .

Q. . . . Anything about their observations or treatment of him that would cause you to believe that he was defending himself?

A. No.

Jordan did not object to this prior questioning, which also involved Gilbert's opinion as to Jordan's truthfulness; thus, he failed to preserve his appellate argument. *See* Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1)(A); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); *Hunt v. State*, No. 14-07-00286-CR, 2008 WL 850134, at *3–4 (Tex. App.—Houston [14th Dist.] Apr. 1, 2008, pet. ref'd) (mem. op., not designated for publication).[2]

---

[2]Even if preserved, Gilbert testified that his opinion was based on his experience and training as a police officer and on his observations of Jordan at the scene. Accordingly, Gilbert's testimony was sufficiently based on his personal knowledge, allowing him to testify to his objective perception of the offense that led to his lay opinion regarding Jordan's culpable mental state. *See Fairow v. State*,

Jordan also argues that the trial court abused its discretion by allowing Gilbert to testify that he believed Jordan had committed "[a]ssault bodily injury family violence." Even if the admission of this evidence were an abuse of discretion, Jordan did not object to this testimony and, therefore, did not preserve any possible error for our review. *See* Tex. R. Evid. 103(a)(1)(A).

We overrule issue two.

## IV. CONCLUSION

Jordan procedurally defaulted his constitutional complaints and his evidentiary complaints. Accordingly, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: September 24, 2020

---

943 S.W.3d 895, 899 (Tex. Crim. App. 1997). And even if the trial court's admission of Gilbert's testimony were preserved and an abuse of discretion, the error would be harmless because there was sufficient evidence introduced apart from Gilbert's lay testimony that sufficiently supported the jury's implied rejection of Gilbert's assertion of self-defense, including Stokes's statements that Jordan had been the aggressor. *See, e.g.*, *Larrinaga v. State*, No. 02-14-00199-CR, 2015 WL 4730710, at *5 (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication); *Clark v. State*, 305 S.W.3d 351, 357–58 (Tex. App.—Houston [14th Dist.] 2010), *aff'd on other grounds*, 365 S.W.3d 333, 335 (Tex. Crim. App. 2012).