ACCEPTED
08-16-00134-cv
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
10/27/2016 3:58:06 PM
DENISE PACHECO
CLERK

# 08-16-00134-CV

Case Number 08-16-00134-CV

IN THE EIGHTH COURT OF APPEALS
at El Paso, Texas

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
10/27/2016 3:58:06 PM
DENISE PACHECO
Clerk

PAUL FLETCHER and wife, JAIME FLETCHER as Next Friends of
Their Daughter, IF,
Appellants,

v.

STEVEN STRIFLER, SS, and SYDNEY STRIFLER,
Appellees.

---

ON APPEAL FROM THE 442ND JUDICIAL DISTRICT COURT, DENTON COUNTY, TEXAS
TRIAL COURT CAUSE NO. 16-03909-443

---

## APPELLANTS' BRIEF

---

| | |
|---|---|
| **THE LAW OFFICE OF CHRISTOPHER A. PAYNE, PLLC** | **ALDOUS\WALKER, LLP** |
| Christopher A. Payne | Charla G. Aldous |
| State Bar No. 15651500 | State Bar No. 20545235 |
| 9101 LBJ Freeway, Suite 760 | Brent R. Walker |
| Dallas, Texas 75231 | State Bar No. 24047053 |
| Telephone Number (972) 755-1954 | Heather L. Long |
| Facsimile Number (214) 453-2435 | State Bar No. 24055865 |
| | 2311 Cedar Springs Rd., Suite 200 |
| | Dallas, TX 75201 |
| | Telephone Number (214)526-5595 |
| ATTORNEYS FOR APPELLANTS | Facsimile Number (214) 526-5525 |
| PAUL FLETCHER and wife, | |
| JAIME FLETCHER as Next | |
| Friends of their Daughter, IF | **October 27, 2016** |

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

1. **APPELLANTS**

   Paul Fletcher, Jaime Fletcher, as Next Friends of IF

2. **APPELLANTS' TRIAL AND APPELLATE COUNSEL**

   Christopher A. Payne
   **LAW OFFICE OF CHRISTOPHER A. PAYNE, PLLC**
   9101 LBJ Freeway, Suite 760
   Dallas, Texas 75243

   Charla G. Aldous
   Brent Walker
   Heather Long
   **ALDOUS\WALKER, LLP**
   2311 Cedar Springs Road, Suite 200
   Dallas, Texas 75201

3. **APPELLEES**

   Steven Strifler, Sydney Strifler, and SS

4. **APPELLEES' TRIAL AND APPELLATE COUNSEL**

   Carlos Balido
   Matt Montgomery
   **WALTERS, BALIDO & CRAIN, LLP**
   10440 N. Central Expressway, Suite 1500
   Dallas, Texas 75231

5. **DISTRICT COURT TRIAL JUDGE**

   Hon. Tiffany Haertling sitting as Judge of the 442nd Judicial District
   Court of Denton County, Texas

# TABLE OF CONTENTS

**Pages**

**Identity of Parties and Counsel** ...................................................... iii

**Table of Contents** .................................................................. iv

**Index of Authorities** ................................................................ vi

**Statement of the Case** ............................................................... 1

**Issue Presented** ...................................................................... 2

**Statement of Facts** ................................................................... 3

    I.    **Allowing Teenagers in the Home Unsupervised Proximately Caused IF Harm** ..................................................... 3

    II.    **The Strifler Teenagers Had Notice of the Danger AV Posed to IF** ........................................................................ 7

    III.    **Leaving the House Unsupervised Created an Environment for the Teenagers to Break Rules and Take Risks** ........................ 11

    IV.    **Steven Strifler Learned About the Party and Did Nothing** .. 14

    V.    **IF Experienced Harm** ................................................... 15

**Standard of Review** ................................................................ 15

**Summary of the Argument** ....................................................... 16

**Argument** .......................................................................... 17

    I.    **The Trial Court Erred if it Granted Summary Judgment on**

**Duty** ................................................................ **17**

    **A.  The Striflers are Not Social Hosts Entitled to Invoke the Dram Shop Act Exclusive Remedy Provision** .................. **18**

        **1.  The Act only applies to those who serve or sell alcohol** ................................................................ **20**

        **2.  Providing alcohol must proximately cause the harm** ...**22**

        **3.  Common-law liability not foreclosed to Plaintiffs under age eighteen** ...........................................**24**

    **B. The Striflers' Duties to IF Arose Under Common-Law** ... **25**

**II.    The Trial Court Erred If It Granted Summary Judgment on Proximate Cause** ............................................... **30**

    **A.  The Acts of Third Parties Did Not Destroy the Causal Links Between the Striflers' Negligence and IF's Injuries** ............................................... **31**

**Prayer** ................................................................ **34**

**Certificate of Service** .......................................... **35**

**Certificate of Compliance** ................................... **36**

# INDEX OF AUTHORITIES

**Pages**

**Cases:**

*Carter v. Abbyad*,
   299 S.W.3d 892 (Tex. App.—Austin 2009, no pet.) ................. 23, 26, 27

*Dew v. Crown Derrick Erectors, Inc.*,
   208 S.W.3d 448 (Tex. 2016)........................................................................ 31

*Doe v. Messina*,
   349 S.W.3d 797 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) .......
   ...................................................................................................... 31, 32, 33

*El Chico Corp. v. Poole*,
   732 S.W.2d 306, 312 (Tex. 1987) ............................................................ 26

*Ford Motor Co. v. Ridgway*,
   135 S.W.3d 598, 600 (Tex. 2004) ............................................................ 15

*Golden v. Tips*,
   651 S.W.2d 364 (Tex. App.—Tyler 1983, no writ) ................................ 26

*Graff v. Beard*,
   858 S.W.2d 918 (Tex. 1993) ...................................................... 18, 19, 20, 25

*Greater Hous. Transp. Co. v. Phillips*,
   801 S.W.2d 523 (Tex. 1990) ............................................................ 23, 25, 26

*Inc. v. Parker*,
   249 S.W.3d 392, 399 (Tex. 2008) ............................................................ 16

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
   289 S.W.3d 844, 848 (Tex. 2009) ............................................................ 16

*Nall v. Plunkett,*
    404 S.W.3d 552 (Tex. 2013) ....................................................................... 23

*Newson v. B.B.,*
    306 S.W.3d 910 (Tex. App.—Beaumont 2010, pet. denied) ................... 26

*Nixon v. Mr. Prop. Mgmt. Co.,*
    690 S.W.2d 546 (Tex. 1985) ....................................................................... 31

*Reeder v. Daniel,*
    61 S.W.3d 359 (Tex. 2001) ............................................................... 20, 24, 25

*Smith v. Merritt,*
    940 S.W.2d 602 (Tex. 1997) ....................................................................... 20

*Smith v. O'Donnell,*
    288 S.W.3d 417, 424 (Tex. 2009) .......................................................... 15, 16

*Valence Operating Co. v. Dorsett,*
    164 S.W.3d 656 (Tex. 2005) ....................................................................... 15

*Williams v. Steves Indus., Inc.,*
    699 S.W.2d 570 (Tex. 1985) ....................................................................... 26

## Statutes:

TEX. ALCO. BEV. CODE § 1.06 ............................................................................ 23

TEX. ALCO. BEV. CODE § 2.01 ..................................................................... 20, 21

TEX. ALCO. BEV. CODE § 2.02(c) ................................................................ 20, 22

TEX. ALCO. BEV. CODE § 2.03 ........................................................................... 20

TEX. ALCO. BEV. CODE § 2.03(a) ...................................................................... 21

TEX. ALCO. BEV. CODE § 2.03(c) ................................................................ 24, 25

**Secondary Sources:**

RESTATEMENT (SECOND) OF TORTS § 315 ..................................................... 26

RESTATEMENT (SECOND) OF TORTS § 323 ..................................................... 23

## STATEMENT OF THE CASE

This lawsuit for damages arose from the actions Appellees took which turned their home into a dangerous place for I.F. and others. This appeal is from a summary judgment order that granted Defendants Steven Strifler, SS, and Sydney Strifler's Traditional and No-Evidence Motion for Summary Judgment in which Defendants challenged the duties owed to I.F. as well as the foreseeability of the harm she endured. Summary judgment was made final by an order severing I.F.'s claims against the Appellees from claims against other Defendants named in the underlying lawsuit.

The Hon. Tiffany Haertling sitting as Judge of the 442nd Judicial District Court of Denton County, Texas, signed the Order granting Defendants summary judgment on April 4th, 2016 and signed the Order granting Defendants motion for severance on May, 18th, 2016. Plaintiff filed a Notice of Appeal on June 7th, 2016.

# ISSUE PRESENTED

The trial court got it wrong. IF asks this Court to reverse the order granting summary judgment on her negligence claims none of the grounds advanced in the Striflers' hybrid motion support the trial court's order.

1. Mr. Strifler left his two teenage children home alone overnight. The teens gave their friends permission to take dangerous actions, including consuming drugs, at the home. Teenage boys sexually assaulted IF during the party. The Striflers argued they were social hosts relieved of common law duties to IF. The trial court erred if it agreed with them.

2. Mr. Strifler gave his children authority over the home, and they exercised that authority over their guests throughout the night. The Strifler teenagers watched as the danger increased during the night, including IF and the boys' interactions before the assault. They chose to allow the party to continue, but claim their own negligence was not a concurrent cause. The trial court erred if it agreed with them.

**STATEMENT OF FACTS**

I.    **ALLOWING TEENAGERS IN THE HOME UNSUPERVISED PROXIMATELY CAUSED IF HARM.**

"I allowed them to stay by themselves at the house on Friday night," admitted Steven Strifler when asked who was in charge of supervising his children on September 28, 2012. C.R. at 220. As a father of three, Mr. Strifler knew that children, especially teenagers, needed supervision. *Id.* He specifically knew that his children, fifteen-year-old SS and sixteen-year-old Sydney, needed supervision when he left them in his home alone while he went out of town for the weekend. *Id.* Mr. Strifler could have sent the children to stay at his parents' home less than an hour away, but decided to let them stay home alone instead. C.R. at 292. Indeed, that Friday night Mr. Strifler's teenagers took advantage of their adult-free house and held the gathering where teenage boys sexually assaulted fourteen-year-old IF.

Mr. Strifler's decision to allow his children to stay in the family home without adult supervision set in motion a series of events that forever changed IF's life:

> Q. You would agree with me that the kids who came over to your house on September 28, 2012, basically were unsupervised?
>
> A. Yes, ma'am.

3

Q. And had you been home, I assume you would have never allowed that to happen.

A. They would have never came in the house.

Q. And, certainly, [IF] wouldn't have been in a situation where she was intoxicated in your home and got raped by two boys if you had been there, correct?

A. Whatever happened to her would not have happened if I was there.

C.R. at 233.

His, SS, took the opportunity to invite his friends to come over, which grew into the party which IF attended that Friday night. C.R. at 264–65. Mr. Strifler's other teenage child, a junior in high school, Sydney Strifler was notified of the gathering, and took it upon herself to supervise the guests. C.R. at 294 - Sydney Strifler Dep. at 15:24-16:12.

One of the people SS invited to the party was his classmate and teammate from the football team, AV. C.R. at 265 - SS Dep. at 18:16-19. Over the course of the week before Mr. Strifler's departure, the teenagers made plans to take advantage of the adult-free house. C.R. at 265 – SS Dep. at 20:3-21:7.

Based on Sydney's recollection, there were 15 to 20 teenagers at the house during the height of the party. C.R. at 297 – Sydney Strifler Dep. at 27:7-

10. Of those, only four were female—IF, AH, Sydney, and Sydney's best friend and fellow junior, Kristin. C.R. at 296-297 – Sydney Strifler Dep. at 25:25-26:13. The gathering began with SS hanging out with his male friend DM in the Strifler house in the presence of then sixteen-year-old Sydney. C.R. at 294 – Sydney Strifler Dep. at 15:6-16. At around 7:00-8:00pm, the first guests arrived and brought alcohol with them. C.R. at 294 – Sydney Strifler Dep. at 16:25-17:2. Later, IF arrived with her friend AH and a group of freshman boys that included AV. C.R. at 239-240 – IF Dep. at 38:15-43:5.

IF and AH met AV and the other freshman boys at the home of a male classmate down the street from the Strifler house. *Id.* The group walked to the Strifler home, bringing their own alcohol with them. *Id.* IF remembered accepting a beer from SS, drinking less than half of it, and walking outside to the backyard. C.R. at 242 – IF Dep. at 49:7-50:15. Once outside, IF observed a group of people smoking marijuana, including IG. C.R. at 242 – IF Dep. at 50:16-51:1. IF smoked marijuana, and walked back inside the house. C.R. at 242 – IF Dep. at 52:11-52:20.

Later, the guests exhausted the supply of alcoholic beverages, and a guest contacted his family friend, J.T. Abbott, to bring over more. C.R. at 265 – SS Dep. at 20:16-21:7. Abbott brought the alcohol, and IF remembered his

arrival. C.R. at 243 – IF Dep. at 53:25-54:22.

IF recalled seeing AV with a baggie containing Xanax pills and hearing others joking about how it would be funny to put the drugs in people's drinks. C.R. at 244-245 – IF Dep. at 59:22-61:8. Later, IF was handed a cup that she believed to contain a mixture of Coca-Cola and liquor. C.R. at 243-244 – IF Dep. at 55:24-57:1. After starting to drink from the cup, IF began to have gaps in her memory. C.R. at 244 – IF Dep. at 58:17-59:10.

SS, Sydney, and the other guests noticed that IF became completely incoherent very quickly. C.R. at 278-279 – SS Dep. 71:4-12, 74:6-10; C.R. at 298-299 – Sydney Strifler Dep. at 33:8-34:23. IF's first memory after consuming the drink was looking for AH and finding her in a restroom performing oral sex on AV. C.R. at 245 – IF Dep. at 61:24-62:5. IF recalled SS being beside her and telling him what she had seen. *Id.* SS responded: "Are you kidding me? No, you didn't see that." C.R. at 245 – IF Dep. at 62:6-9. IF also recalled vomiting blood in the presence of SS, and asking him to take her to the hospital. C.R. at 245 – IF Dep. at 63:5-19.

After seeing AH and AV in the restroom, IF recalled leaving the house through the front door, stumbling outside, and AV following her. C.R. at 245-246 - IF Dep. at 64:23-65:9. IF described the events that followed in the pages

6

cited, including: "I remember [AV] bugging me, trying to kiss me … and I was falling all over the place." C.R. at 245-247 – IF Dep. at 64:23-69:9. She cried as she fell on the ground and felt AV push her head onto his penis. *Id.* IF recalled IG joining them and the two boys trying to get her to give them oral sex at the same time. *Id.* She also remembered hearing Sydney's voice outside and J.T. Abbott attempting to have IF perform oral sex on him. *Id.* The next thing IF remembered was waking up in Mr. Strifler's bedroom. *Id.*

Sydney recalled IF coming back inside the house and vomiting for approximately an hour. C.R. at 318 – Sydney Strifler Dep. at 111:4-113:7. Sydney recognized that IF was too intoxicated to leave the house with AH and AH's mother. *Id.* She feared that AH's mother would learn about the party, and Sydney insisted the IF stay at the Strifler house. *Id.* Sydney drove IF home the following morning. *Id.*

## II.    The Strifler Teenagers Had Notice of the Danger AV Posed to IF.

SS knew that AV posed a danger to the girls who attended that party at the Strifler home while his father was away. C.R. at 281 – SS Dep. at 84:9-21 [referencing DX 29]. There were several warning signs indicating that at least AV had every intent of engaging in sexual contact with females impaired by alcohol at the party. *Id.; See* also C.R. at 351-352 – AV Dep. at 46:8-49:6. The

7

evening before the party, AV exchanged the following text message about the party with AH, IF's best friend.



AV asked SS before the party if IF and AH could come over on the night boys planned to drink unsupervised in the Strifler house. C.R. at 281 - SS Dep. at 84:9-85:21. SS could not remember if he had seen the text exchange above, but admitted that is was possible he had seen it (though he claimed not to understand what it meant). (*Id.*).

AV was questioned about the above text message exchange that occurred before SS allowed him to bring AH and IF to the party, and his

response was to assert his Fifth Amendment privilege against self-incrimination. C.R. at 351 – AV Dep. at 47:16-48:7. Information available to SS on AV's Twitter account at the time of the party also put SS on notice that AV wanted to have sex with girls, even if girls protested. C.R. at 353 - AV Dep. at 55:1-56:3; C.R. at 359 - Ex. 8, AV's Public Claim "It's Not Rape if I Have Swag" posted prior to the rape [DX 37]. The week before the party, SS could also see that AV publicly announced his approval of the following Adolf Hitler statement: "Don't let what other people think, stop you from doing the things you love." C.R. at 353 – AV Dep. at 55:1-58:14; C.R. at 362 - Ex. 9, Hitler Approval [DX 38].

Further, AV publicly displayed approval of rape and fixation on rape just four days prior to SS allowing him to come into the unsupervised Strifler house with two girls, one of which he had already expressed a desire to obtain oral sex from that she stated she would not consent to give. C.R. at 354 - AV Dep. at 58:15-59:24; C.R. at 363 - Ex. 10, Raped in Hell Post 9/24/12 [DX 39].



In fact, SS and Sydney witnessed AV having oral sex with AH (the girl that had told AV "no" when he requested oral sex at the party via text message the previous day). C.R. at 351 – AV Dep. at 47:16-48:7; C.R. at 344 - AV Text Re: Inviting IF and AH [DX 29 & DX 34]; C.R. at 267 - SS Dep. at 26:18-34:1; C.R. at 320-321 - Sydney Strifler Dep. at 119:20-122:12. Sydney confirmed that she and SS witnessed this act before IF was raped. C.R. at 320-321 - Sydney Strifler Dep. at 119:20-122:12. Sydney's testimony about the sequence of events is consistent with IF's recollection and provides strong evidence that Sydney

was present when AV was showing the Xanax around the kitchen and talking with others about putting it in drinks as IF recalls. According to Sydney, she was in the kitchen at the beginning of the party before those events happened to AH and after AV arrived. C.R. at 295 – Sydney Strifler Dep. at 19:21-20:14.

### III. LEAVING THE HOUSE UNSUPERVISED CREATED AN ENVIRONMENT FOR THE TEENAGERS TO BREAK RULES AND TAKE RISKS.

Allowing teenagers to stay home alone on a Friday night without any supervision created an environment ripe for breaking rules and taking risks. Although he did not keep alcoholic beverages in the home, Steven Strifler had previously caught Sydney intoxicated and in possession of alcohol. C.R. at 220 – Steven Strifler Dep. at 16:25-17:2; C.R. at 222 – Steven Strifler Dep. at 22:9-23:23. Since there was no alcohol in the home, the teenagers brought their own beverages and used the home as a place to consume their drinks since there were no adults present to stop them.

Sydney, a high school junior at the time, was at home when her brother's freshman friends began to arrive with alcohol, marijuana, and other substances. C.R. at 294-295 – Sydney Strifler Dep. at 14:11-29:24; C.R. at 266-267 – SS Dep. at 24:1-26:2. She knew SS, AV, and the other freshmen intended to experiment with alcohol since there were no parents in the house and she knew that drinking alcohol, particularly when consumed in combination with

11

other substances, could lead to several harmful situations. C.R. at 293-294 – Sydney Strifler Dep. at 11:16-14:10; C.R. at 294-295 – Sydney Strifler Dep. at 14:11-29:24. Rather than tell SS's guests to leave or call her father to report the gathering, Sydney decided to let the group stay and undertook to supervise them herself. C.R. at 294 – Sydney Strifler Dep. at 15:21-16:12. Sydney believed herself to be mature enough to supervise and control the party. *Id.* In her own words: "At the moment it didn't concern me because I wasn't aware my father was going to find out, so I was okay with them drinking that small amount of alcohol f I was there to watch them." C.R. at 295 – Sydney Strifler Dep. at 19:3-10.

The kitchen quickly transformed into a bar with alcohol for the teenagers to consume. C.R. at 294-298 – Sydney Strifler Dep. at 14:11-29:24. The backyard became a place for the teenagers to smoke marijuana. C.R. at 297 – Sydney Dep. at 27:14-28:12. Illicit sexual acts began occurring in bedrooms and bathrooms. C.R. at 266-269 - SS Dep. at 24:19-35:23; C.R. at 297, 316-326 - Sydney Dep. at 26:18-27:7, 102:11-144:24.

During the course of the party, Sydney became nervous about the guests opening and closing the doors to the house, and feared that it would alert the neighbors. C.R. at 295-296 – Sydney Strifler Dep. at 21:24-22:13. Sydney

instructed the guests to text her if additional individuals needed to enter the house, and she would open the doors. *Id.* Sydney recognized the party was getting out of control and becoming dangerous, but chose not to call her father or otherwise attempt to stop the growing crowd of unsupervised teenagers going in and out of the house. C.R. at 294-298 – Sydney Dep. at 14:11-29:24.

SS and Sydney knew that their guests were present without the knowledge of their parents in order to take advantage of the adult-free environment. C.R. at 296 – Sydney Rep. at 25:8-27:6. Instead of stopping the party that was getting out of hand, Sydney called her high school classmates Kristin and Chance to help her watch over the party. *Id.*

Sydney personally witness AV—one of IF's assailants—receive oral sex from the other freshman girl at the party before he sexually assaulted IF. C.R. at 320-321 - Sydney Strifler Dep. at 119:20-122:12. SS and others at the party witness the sexual interaction as well. C.R. at 267 - SS Dep. at 26:18-34:1. The party was quickly getting out of control, and if SS had been in sober mind, he would have sent everyone home when the initial supply of alcohol was depleted. Instead, SS encouraged the other teenagers to procure more alcohol. C.R. at 265 – SS Dep. at 20:16-21:7.

After the party, SS told the police that IF was incapable of consenting to

sex when she was at his party: C.R. at 277-278, 285 - SS Dep. at 68:4-72:20, 98:1-19; C.R. at 372 - Ex. 13, SS Aff. 10/29/12 [DX 26].

> I threw a party and there was achohol. A girl named e▇ fl▇ was really intoxicated She was throwing up and stumbling every where she had no clue what was going on She went out side and had sex with A▇ V▇ and I▇ G▇ I▇

He described her to police as "out of it," "falling," and not having "a clue." C.R. at 278 - SS Dep. at 70:18-71:12. Sydney confirmed the same in her statements to police and during her deposition. C.R. at 298-299 – Sydney Strifler Dep. at 33:8-34:23.

## IV. STEVEN STRIFLER LEARNED ABOUT THE PARTY AND DID NOTHING.

The mother of one of the freshman boys who attended the party called Steven Strifler when she found her son extremely intoxicated and informed him of the party. C.R. at 220-221 – Steven Strifler Dep. at 12:11-15:15. Mr. Strifler asked her to bang on the door and stop the party while he began calling his children. *Id.* The teenagers did not answer the phone, and Mr. Strifler took no further action until the following morning. C.R. at 221 – Steven Strifler Dep. at 14:14-16:14. Rather than contacting neighbors, the children's mother, the children's grandparents, or the police in order to check on the situation at his home, Mr. Strifler chose not to act. *Id.*

14

## V.     IF Experienced Harm.

IF has suffered severe mental anguish and developed post-traumatic stress disorder since these events occurred. C.R. at 252 – IF Dep. at 89:1-91:24. She left school as a result of the bullying and harassment by Sydney and others as well as the trauma of having to go to school with her rapists. C.R. at 274-280 - SS Dep. at 55:16-81:12.

## STANDARD OF REVIEW

This appeal arises from a general order granting a hybrid motion for summary judgment on all of Appellant's claims. Whether the trial court erred in granting summary judgment on Appellant's negligence claim is the only matter raised on this appeal. Normally, appellate courts reviewing hybrid summary judgment decisions, consider whether the non-movant met her burden on no-evidence points before evaluating error on the propriety of traditional summary judgment. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)

This Court reviews summary judgment decisions *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing both a traditional and no-evidence summary judgment, it considers the evidence in the light most favorable to the non-movant. *Smith v. O'Donnell*, 288 S.W.3d

417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). It credits evidence favorable to the non-movant if reasonable jurors could, and disregards evidence contrary to the non-movant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

Because this appeal arises from a general order that did not specify the grounds for the trial court's decision and both parts of the hybrid motion raised identical grounds for summary judgment, this brief addresses the hybrid standards for each ground raised together.

## SUMMARY OF THE ARGUMENT

This is a case for a jury to decide. The Striflers voluntarily engaged in conduct that turned their residential home into a dangerous place for IF and others. They cannot use the exclusive statutory remedy provision of the Dram Shop Act to shield themselves from the duties they owed IF under common law. That provision only applies to providers that sell or serve alcohol for injuries proximately caused by providing alcohol, none of which forms the factual basis of IF's claims against the Striflers. Further, the exclusive statutory remedy does not apply to claims involving providing alcohol to persons under the age of eighteen, and cannot apply here because IF was fourteen when these

16

events took place.

Summary judgment on proximate cause was also wrong. The sexual assault IF endured naturally progressed from the environment that Appellees created and the actions they took. Their actions were a proximate cause of the harm IF suffered and that cause was not superseded by others' foreseeable criminal acts.

IF asks this Court to reverse the trial court's order granting summary judgment on her negligence claim so that a jury can consider the case.

## ARGUMENT

### I. THE TRIAL COURT ERRED IF IT GRANTED SUMMARY JUDGMENT ON DUTY.

In their hybrid motion for summary judgment, the Striflers argued that they should not be held liable for the harm that came to IF while at their home because they did not owe IF a legal duty. They argued that they were social hosts liable only to the extent provided by statute for providers of alcohol. They did not, however, challenge the duty element on any other grounds under the no-evidence summary judgment standard. Nor did they meet their traditional summary judgment burden to conclusively negate the element of duty on any other basis than as social hosts.

The Striflers were not social hosts entitled to avoid the imposition of

17

other common law duties. The law does not support their position, and neither do the facts. If the trial court granted summary judgment based on the element of duty, it did so in error. The Striflers owed IF a duty to take affirmative action to control or avoid increasing the danger from another persons' conduct which because they at least partially created the danger by their own acts.

**A. THE STRIFLERS ARE NOT SOCIAL HOSTS ENTITLED TO INVOKE THE DRAM SHOP ACT EXCLUSIVE REMEDY PROVISION.**

This is not a social host case. This is not a case where evidence shows the hosts of the party provided alcohol to a person that was injured due to the alcohol's intoxicating affects. Instead, it is a case where the residents of a house made the house available to teenagers for the purpose of engaging in dangerous activities without adult supervision – including use of illegal drugs, drinking, and sexual assault. And a case where two of the residents had every reason to know someone at the party intended to get sexual intercourse from female guests who were unable to consent. And it is a case where a resident of the home recognized the danger that was created, in part by her own conduct, and took action to increase the danger that had been created.

In *Graff v. Beard*, the Supreme Court of Texas decided whether it should

impose a common law duty on a social host who makes alcohol available to an intoxicated adult guest who the host knows will be driving. 858 S.W.2d 918 (Tex. 1993). The injured person at issue in that case was a motorist hit by the drunk guest after leaving the host's home. *Id.* at 918–19. The decision did not expand beyond the facts presented by the parties to the case and did not address situations where a person may be harmed at a social gathering where alcohol was consumed but that harm was not proximately caused by an intoxicated person. *Id.* at 919. Indeed, as noted in the dissent by Justice Gammage and joined by Justice Doggett:

> The legislature may enact a statute that creates a duty. But the legislature's failure to act does not "uncreate" an existing duty. A duty created by the common law continues to exist unless and until the legislature changes it, and as such the existing common law duty applies to the defendant here.

*Id.* at 922.

The *Graff* Court placed significant emphasis on the legislature's then-recent (1993) passage of legislation making the Texas Dram Shop Act the exclusive basis for civil liability of commercial providers of alcohol: "The statutory duty established by the legislature also placed a less onerous burden on commercial providers and a correspondingly higher burden of prove on injured parties than the common law duty." *Id.* at 919–20. The decision came

19

out nearly ten years before the legislature amended the Texas Dram Shop Act to expand social host liability.

The cases relied on by the Striflers below—*Reeder v. Daniel* and *Smith v. Merritt*—also pre-dated the 2005 legislative expansion of social host liability and involved individuals over the age of eighteen. *Reeder v. Daniel*, 61 S.W.3d 359 (Tex. 2001); *Smith v. Merritt*, 940 S.W.2d 602 (Tex. 1997). The *Reeder* Court held that it was not permitted to recognize a social host cause of action under Texas law based on the same 1993 amendments relied on by the *Graff* Court to reach its conclusions and those amendments did not include any provision for social host liability. *Reeder*, 61 S.W.3d at 362-65.

After *Reeder* and *Smith* were decided, the 2005 Legislature amended the Act to add a statutory duty for certain social hosts in situations involving alcohol. Lawmakers did not, however, go so far as to expressly excuse hosts of social gatherings from other common law duties that might exist simply because alcohol consumption took place at the gathering. The express language of the present statute makes its inapplicability to this case clear. *See* TEX. ALCO. BEV. CODE §§ 2.01, 2.02, 2.03.

### 1.    *The Act only applies to those who serve or sell alcohol.*

The presence and consumption of alcohol alone does not bring a case

within the Act and its limits on available causes of action. Rather, drafters narrowly defined the class of actors and the activities they intended the statute to address—*providers* that sell or serve alcohol for harms proximately caused by such *provision*. *See* TEX. ALCO. BEV. CODE at § 2.01 (defining "provider" and "provision").

Only providers are entitled to the Act's elimination of common law duties, as evidenced by the express language of section 2.03(a) and (b):

(a)   **The liability of providers** under this chapter for the actions of their employees, customers, members, or guests who are or become intoxicated **is in lieu of common law** or other statutory law warranties and **duties of providers** of alcoholic beverages.

(b)   This chapter **does not impose obligations on a provider** of alcoholic beverages other than those expressly stated in this chapter.

*Id* at § 2.03(a), (b) (emphasis added).

The Striflers' own summary judgment evidence disproved their status as "providers" entitled to protection for common law duties by the Act's exclusive remedy provision. To be considered providers, the Striflers had to conclusively prove they sold or served alcohol that proximately caused the occurrence at issue.  Steve Strifler testified he did not keep any alcohol in the house at the relevant time. S.C.R. at 105–06.  His (then) seventeen-year-old

daughter Sydney and son SS confirmed that they did not have alcohol to provide teens coming to their adult-free house. S.C.R. at 120-22. Instead, the teenagers visiting the unsupervised house brought their own alcohol with them. S.C.R. at 142-43. Both Sydney and SS denied mixing or serving drinks to other people at their house. S.C.R. at 120-25, 142-50. According to their own admission, the Striflers provided an environment conducive to dangerous activities like drinking but they did not provide alcohol to any of the individuals involved.

### 2. *Providing alcohol must proximately cause the harm.*

Had the legislature wanted to relieve all hosts of social gatherings of their existing common law duties to situations where providing alcohol was not a proximate cause of the harm it would have done so. It did not when it amended the Act to address the very narrow situation of when an adult age twenty-one or older can be held liable for damages *proximately caused* by providing the intoxication of a minor under the age of eighteen. TEX. ALCO. BEV. CODE at § 2.02(c). By their plain meaning, the amendment does not wholly absolve individuals below, at, or above the age of twenty-one from common law duties that exist in situations where the intoxication did not proximately cause the damages at issue. *Id.*

In cases where allegations are made of a recognized tort separate and apart from the mere negligence in the serving of alcohol, the persons who host a party where alcohol happens to be consumed can and should be held liable for damages caused by breaching other common law duties. *See e.g., Phillips*, 801 S.W.2d at 525 (party who agreed to help someone owes a duty); *Carter v. Abbyad*, 299 S.W.3d 892, 895-98 (Tex. App.—Austin, no pet.) (recognizing an undertaking under Restatement (Second) of Torts § 323 constitutes a "special relationship" or control).

The Act's stated purpose confirms the statute was not created to eliminate common law duties in situations where alcohol is not the proximate cause of the occurrence at issue. It exclusively deals with the safe sale and regulation of alcoholic beverages. *See* TEX. ALCO. BEV. CODE § 1.06. It does not govern situations where a person engages in acts unrelated to the consumption of alcohol that proximately cause injury. In fact, in *Nall v. Plunkett*, the Supreme Court of Texas twice emphasized that it would not decide the merits of a case alleging the social hosts owed duties to the plaintiff outside the social host liability provision enacted in 2005, and instead decided the matter pending before it on procedural grounds alone. 404 S.W.3d 552, 554–56 (Tex. 2013).

As explained in further detail later in this brief, the Striflers' undertook actions that turned their residential home into a dangerous place for IF and others. The sexual assault IF endured naturally progressed from the environment that Defendants created and the actions they took. Their actions were a proximate cause of the harm IF suffered and that cause was not superseded by others' foreseeable criminal acts.

### 3. Common-law liability not foreclosed to plaintiffs under age eighteen.

Plaintiffs under the age of eighteen maintain their common law liability claims under the plain language of the exclusive statutory remedy provision:

> (c)    This chapter provides the exclusive cause of action **for providing an alcoholic beverage** to a person **18 years of age or older**.

TEX. ALCO. BEV. CODE § 2.03(c) (emphasis added). If the legislature intended to prevent minors like IF from recovering for all injuries in which they could be harmed by the provision of alcoholic beverages, it would have included persons under the age of eighteen in the exclusive remedy provision.

Justices on the *Reeder* Court recognized this very point. The concurring opinion authored by Chief Justice Phillips with Justice Hankinson and O'Neill joining, stated:

24

> Nothing in the Dram Shop Act itself forecloses common-law liability for an adult who provides alcohol to a minor… If the Legislature wanted to foreclose a cause of action for providing alcohol to persons under eighteen, it could have easily written the law so that it would provide the exclusive remedy for providing alcohol to anyone, regardless of age.

*Reeder*, 61 S.W.3d at 365 (Phillips, CJ concurring) (citing TEX. ALCO. BEV. CODE § 2.03(c)). The concurrence also noted that *Graff* clearly left open the question of liability for social host providing alcohol to minors. *Id.*

Again, this is not a social host case. The Striflers were not entitled to no-evidence or traditional summary judgment on duty and the order granting summary judgment cannot be affirmed on that ground.

### B. THE STRIFLERS' DUTIES TO IF AROSE UNDER COMMON LAW.

The facts and circumstances surrounding IF's sexual assault gave rise to common law duties because: (1) the Striflers' actions increased IF's risk of harm, (2) the Striflers engaged in negligent undertaking; or (3) both. IF's negligence claims should not have been dismissed based on a lack of duty.

To determine whether a duty exists, courts consider several interrelated factors: risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Phillips*, 801 S.W.2d at 525.

Generally, the law does not impose a duty on persons to control the conduct of others. *Id.* However, one of the core principles of common law negligence recognizes a people "have the duty to take affirmative action to control or avoid increasing the danger from another's conduct which the actor has at least partially created." *El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987) (citing *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570 (Tex. 1985), *Golden v. Tips*, 651 S.W.2d 364 (Tex. App.—Tyler 1983, no writ), and Restatement (Second) Torts § 315 (1965)).

Likewise, an actor that voluntarily takes on a duty he or she would otherwise not have, must act reasonably in that undertaking. *Newson v. B.B.*, 306 S.W.3d 910, 914 (Tex. App.—Beaumont 2010, pet. denied). For instance, in *Carter v. Abbyad*, victims stabbed by a drugged and threatening party goer filed suit against the assailant's main companions for bringing him to the party. 299 S.W.3d at 894–95. The trial court dismissed the claims on the pleadings after several rounds of special exceptions. *Id.* According to those pleadings, the assailant's companions observed him acting bizarre and threatening under the influence of drugs and decided to take him to a party in that condition because it would be fun to watch the assailant be ridiculed. The court examined whether the companions had a duty to the partygoers

26

that the assailant stabbed, and found the facts compelling enough to find the companions owed a duty. *Id.* However, after balancing the risk, foreseeability, and likelihood of injury based on the facts alleged in the petition, it could not find any allegations to support that the companions had reason to believe that the assailant would use a knife to attack someone at the party. *Id.* at 895–900. The court ultimately held that it could not find a duty because there was no evidence of the companions having a special relationship or voluntarily taking control of the assailant with others' reliance on that control.

Jointly and individually each of the Striflers had a legal duty to IF. Steven Strifler voluntarily took the affirmative course of action to allow his teenagers to stay home without any adult supervision. C.R. at 220. He had an obligation to engage in that course of action reasonably and a special relationship with his children that gave him the right of control over them. *Id.* His children, over whom he had a right of control and who he gave authority to regulate his home, allowed: drugs, alcohol, and a person they had reason to know glorified rape in that home. At the time they let those things happen, they had reason to know that AV intended to take sexual advantage of at least one girl who had already told him she did not consent to sexual contact with him at that party.

SS and Sydney had individual duties that arose separate and apart from Strifler's assumed course of conduct. SS and Sydney voluntarily allowed multiple minors to enter their home with drugs and alcohol so that those minors could take advantage of the fact that there were no adults around to stop them. C.R. at 294 Sydney Strifler Dep. at 16:25-17:2. At the time SS invited AV, he had reason to know and should have known that AV glorified rape and intended to engage in sexual contact with females at the party regardless of whether they consented to his advances. C.R. at 281 – SS Dep. at 84:9-85:21 [referencing DX 29]; C.R. at 351-353 – AV Dep. at 46:8-49:6, 55:1-56:3; C.R. at 359 - Ex. 8, AV's Public Claim "It's Not Rape if I Have Swag" posted prior to the rape [DX 37].

Moreover, even if SS's pre-party knowledge of the danger AV posed to females at the party was not enough to create a duty, events that took place before the sexual assault put them on notice of the risk they increased by allowing AV in their home. Specifically, the evidence shows SS and Sydney were aware of the danger they created by opening their home to AV because: (1) both witnessed AV engaging in sexual contact with AH, a girl with whom he had no prior romantic relationship; (2) they observed AV handling Xanax drugs in their home; (3) they saw these things prior to AV's attack on IF; (4)

they witnessed IF becoming suddenly incoherent and unaware of her surroundings; and (5) they witnessed AV paying romantic attention to IF in that state. C.R. at 295, 298-300, 318, 320-321 - Sydney Strifler Dep. at 19:21-20:14, 33:8-34:23, 39:8-40:22, 111:4-113:7, 119:20-122:12; C.R. at 267, 278 - SS Dep. at 26:18-34:1, 70:18-71:12; C.R. at 244-245 – IF Dep. at 59:22-61:8.

SS and Sydney gave AV and the other teens at the party permission to remain in the home after witnessing these events. *Id.* They had the authority to make AV leave after witnessing those things, but they chose to allow him to remain in the environment. They chose to allow him to remain in the environment despite witnessing him begin paying romantic attention to IF after she became suddenly incoherent and unaware. SS and Sydney were not under an obligation to continue the party as they witnessed these increasing dangers. The party continued because they affirmatively decided to let it continue.

The Strifler children's voluntary choice and their control is evidenced by their conduct. They exhibited their control over the home by making demands on the people there throughout the night, for instance: (1) requiring new people to be allowed in by texting a guest and the guest having Sydney open the door; (2) kicking DM out when he was too intoxicated; (3) refusing

to allow IF to leave with her preset ride; (4) moving all people out of the backyard when DM's mother approached the home; (5) demanding AV get out of the bathroom when he was there with AH. C.R. at 295-296, 304, 318, 320-321 – Sydney Strifler Dep. at 21:24-22:13, 54:24-57:17, 111:4-113:7, 119:20-122:13. AV knew SS and Sydney controlled who could come and who could stay at the party because he asked SS for permission to invite IF and AH in the first place. C.R. at 281 - SS Dep. at 84:9-85:21. Moreover, they were **ON NOTICE** that AV was dangerous in exactly this way.

Simply put, the Striflers owed IF a duty to act reasonably based on the courses of action they willfully chose to take. IF's injuries were not proximately caused by intoxication. They were caused by the environment Appellees willfully created. This is not a social host matter. It is a matter of common law negligence. Therefore, IF's negligence claims are not precluded by the Dram Shop Act, and evidence provided by IF raised a genuine fact issue as to the existence of the common law. The trial court's order should not be affirmed as to the existence of a duty.

## II. THE TRIAL COURT ERRED IF IT GRANTED SUMMARY JUDGMENT ON PROXIMATE CAUSE.

Appellees also moved for summary judgment under both traditional and no-evidence standards on the proximate cause on IF's negligence claims.

They argued that they should not be held liable for the harm that came to IF while at their home because: (1) the conduct of the boys that sexually assaulted IF constituted an intervening and superseding cause; and (2) IF's injuries were not foreseeable. The evidence IF submitted shows there are fact issues as to both arguments that a jury should decide. Therefore, the trial court erred if its order dismissing IF's negligence claims was based on a lack of proximate cause.

### A. The Acts of Third Parties Did Not Destroy the Causal Links Between the Striflers' Negligence and IF's Injuries.

There can be more than one proximate cause of a person's injury. A superseding cause is one that alters the natural sequence of events flowing from the Defendants' negligence, causing an injury different from that which might have been expected at the time of the original negligent act. *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 451–52 (Tex. 2016). Not all new and independent causes destroy the causal link necessary to hold a defendant liable. *Id.* To destroy liability, the new and independent cause must be a superseding cause—causing a wholly unexpected injury. *Id.*

Criminal conduct of a third party is not a superseding cause if that conduct is a foreseeable consequence of negligence. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W. 2d 546, 549-50 (Tex. 1985). In *Doe v. Messina*, a case relied on by

31

Appellees, Doe brought suit against the owners of a property on Lake Travis that included two large houses. 349 S.W.3d 797, 799 (Tex. App.—Houston [14th Dist.] 2011, pet. filed). Doe, her eventual assailant Kervin, Doe's brother, and the owners' two twin sons used the guest house on the property to party after going to a concert. Doe fell asleep on the couch and woke to Kervin sexually assaulting her. She asserted a claim against the property owners, alleging that they were negligent in supervising the teenagers and knowingly allowed them to consume drugs and alcohol. *Id*. She did not assert the property owners' sons were liable for any negligence, and did not provide any evidence that the property owner knew or should have known there was alcohol and drug use in the house. *Id.* at 801–03. The appellate court affirmed summary judgment, because the evidence showed there was no evidence presented that the sexual assault was foreseeable as a consequence of allowing those teenagers to consume alcohol without adult supervision. *Id.* at 803.

This case is different. Here, there is plenty of evidence for a jury to conclude that Mr. Strifler should have known his children would experiment with alcohol, drugs, and invite friends over to his unsupervised home despite his testimony to the contrary. He recognized that he had caught Sydney

drinking on a prior occasion, and Sydney herself testified that she was an experienced drinker by the time Mr. Strifler left she and her brother alone in her home. C.R. at 293 - Sydney Strifler Dep. at 11:12-13:14. Even if Mr. Strifler did not keep alcohol in his home, he was on notice that his daughter knew how to get alcohol from other sources.

More importantly, Mr. Strifler aside, this case involves direct claims of negligence against SS and Sydney for their own acts on the night of September 28, 2012. And there is ample evidence, as described above, that SS and Sydney were absolutely aware of the drugs, alcohol, sexual intentions of AV, and his targets before he sexually assaulted IF in the front yard while she was drugged. These claims and this type of evidence was not present in *Messina*, but it was properly before the trial court in this case.

The sexual assault of IF was part of the natural progression of events that SS and Sydney put into motion when they allowed their unsupervised house to be a place where teens used alcohol, illegal drugs, and joked about putting drugs in drinks. They were both aware that AV and AH engaged in oral sex and that IF was absolutely unaware of the things around her. They also knew AV glorified rape and did not have any regard for whether a girl told him to stop.

They had multiple opportunities to ask any and all guests to leave as they witnessed the party becoming more and more dangerous. And they had utilized their authority over the events taking place in their home in other ways throughout the night. None of the evidence indicates the teenagers there would not have left the home if Sydney or SS told them to do so. To the contrary, the evidence shows the teenagers were following the directions Sydney gave them while at the home. CR at 366 & 373.

The summary judgment evidence IF brought before the trial court contradicts the self-serving, conclusory testimony offered by the Striflers to prove they could not have anticipated AV's attack that night. Therefore, the evidence and facts provided by IF raised a genuine fact issue, as to whether IF's injuries were foreseeable to the Striflers and that should have precluded summary judgment at the trial court.

## **PRAYER**

WHEREFORE, PREMISED CONSIDERED, the Appellant respectfully prays that the Honorable Court sustain their point of error and reverse the judgement of the trial court and either render a judgment for Appellant or remand the case for further proceedings in the case.

RESPECTFULLY SUBMITTED,

/s/ Christopher A. Payne
Christopher A. Payne
State Bar No. 15651500
chris@christopherapayne.com
**THE LAW OFFICE OF
CHRISTOPHER A. PAYNE, PLLC**
9101 LBJ Freeway, Suite 760
Dallas, Texas, 75243
Phone: 972-775-1954
Fax: 214 435-2435

CHARLA G. ALDOUS
Texas Bar No. 20545235
caldous@aldouslaw.com
BRENT R. WALKER
Texas Bar No. 24047053
bwalker@aldouslaw.com
HEATHER L. LONG
Texas Bar No. 24055865
hlong@aldouslaw.com
**ALDOUS\WALKER, LLP**
2311 Cedar Springs Rd., Suite 200
Dallas, TX 75201
Phone: (214) 526 — 5595
Fax: (214) 526-5525

**ATTORNEYS FOR APPELLANTS**

**CERTIFICATE OF SERVICE**

On October 27th, 2016, this Appellate Brief is being served upon all counsel of record through the Court's e-filing system.

/s/ Christopher A. Payne
Christopher A. Payne

Gregory R. Ave

35

Greg.Ave@wbclawfirm.com
Carlos Balido
Carlos.balido@wbclawfirm.com
WALTERS BALIDO & CRAIN
Meadow Park Tower, Suite 1500
10440 North Central Expressway
Dallas, Texas 75231
Phone: (214) 347-8320
Fax: (214) 347-8321

**Attorneys for Appellees**
**Steven Strifler, SS and**
**Sydney Strifler**

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3), I certify that there are 8191 words in the Appellant's brief. I relied on the word counter in Microsoft Word.

<u>/s/ Christopher A. Payne</u>
Christopher A. Payne