Jane DOE, Appellant,

v.

**Louis A. MESSINA and Christine Fields, Appellees.**

No. 14–10–00419–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 26, 2011.

Derek Daniel Bauman, Gregory N. Jones, Erin Jones Brown, Houston, for appellant.

Jeffrey A. Fanaff, Houston, for appellees.

Panel consists of Justices ANDERSON, SEYMORE, and McCALLY.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Jane Doe, sued appellees, Louis A. Messina and Christine Fields, for ordinary negligence, gross negligence, and premises liability. The trial court granted summary judgment against Doe on each of her claims. We affirm.

### I. BACKGROUND

In 2005, Messina owned property on Lake Travis in Austin which included two houses: a large house located away from the lake (the "main house"); and a smaller guest house located near the lake (the "guest house"). Messina and Fields were married. Messina's twin sons, Louis Jr. and Christopher, and Doe's brother, Nicholas, were in a rock band. In October 2005, the band performed a show in Austin to celebrate the eighteenth birthdays of Louis Jr. and Christopher; Nicholas was already eighteen-years old. Several persons attended the show, including Doe, who was sixteen-years old, and Shawn Kervin, a nineteen-year-old male. Following the show, the group went to the guest house where they drank beer and liquor and smoked marijuana. Additionally, Christopher and Kervin took the illegal narcotic "ecstasy." After several hours of "partying," Nicholas and his girlfriend left and spent the night at the main house, and the rest of the group slept at the guest house.

In her deposition, Doe testified as follows. While sleeping on the couch, she was awakened by "the feeling someone's hands inside my vagina." Doe identified Kervin as the assailant. Kervin then engaged in sexual intercourse with Doe. Doe did not attempt to stop Kervin because she was scared and "didn't know what to do."

Subsequently, Doe sued Kervin for several intentional and negligence torts and appellees for ordinary and gross negligence and premises liability. The legal basis of Doe's claims against appellees is that they were negligent by failing to supervise a group of teenagers whom they expressly permitted to stay at the guest house and knew or should have known were consuming alcohol and drugs. Appellees filed a no-evidence motion for summary judgment challenging each of Doe's claims. The trial court granted appellees' motion and severed Doe's claims against appellees.

### II. SUMMARY JUDGMENT

In a single issue, Doe contends the trial court erred by granting summary judgment in favor of appellees relative to her ordinary-negligence, gross-negligence, and premises-liability claims.

### A. Applicable Law and Standard of Review

We review summary judgments *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). After adequate time for discovery, a party may move for summary judgment on the ground there is no evidence of one or more essential elements of a claim on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i); *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005). The movant must state the elements on which there is no evidence. Tex.R. Civ. P. 166a(i). Unless the respondents produce summary-judgment evidence raising a genuine issue of material fact on the challenged element, the trial court must grant the motion. *Id.; Urena,* 162 S.W.3d at 550. We indulge every reasonable inference from the evidence in favor of the non-movant, resolve any doubts arising from the evidence in its favor, and take as true all evidence favorable to it. *Malcomson Rd. Util. Dist. v. Newsom,* 171

S.W.3d 257, 263 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). When a summary judgment does not specify the grounds upon which the trial court ruled, as here, we must affirm it if any of the summary-judgment grounds on which judgment could be based is meritorious. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

## B. Ordinary Negligence

We first address whether the trial court erred by granting summary judgment in favor of appellees on Doe's ordinary-negligence claim. Doe alleged that appellees were negligent by failing to supervise the teenagers and control their alcohol and drug consumption. In their motion for summary judgment, appellees argued there is no evidence supporting the contention that their negligence, if any, proximately caused Doe's injuries.

### 1. Applicable law

■ To prevail on a cause of action for negligence, a plaintiff must establish that (1) the defendant owed her a legal duty, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injuries. *Nabors Drilling, U.S.A., Inc. v. Escoto,* 288 S.W.3d 401, 404 (Tex. 2009). Doe also apparently contends that her ordinary negligence claim subsumes a claim for "negligent undertaking." To support this contention, Doe presented the affidavit of her mother who averred that, prior to the night of the party, Messina assured her Doe and Nicholas were welcome to stay at his guest house and "that he would be there." [1] Although a plaintiff asserting a claim for negligent undertaking must prove additional elements relative to the defendant's assumption of a duty,[2] the plaintiff must also prove that the defendant's breach proximately caused the plaintiff's injuries. *See Torrington Co. v. Stutzman,* 46 S.W.3d 829, 838 (Tex.2000).

■ The components of proximate cause are cause in fact and foreseeability. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). These elements cannot be established by mere conjecture, guess, or speculation. *Id.* Foreseeability means the defendant, "as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 549–50 (Tex.1985). The general danger, not the exact sequence of events that produced the harm, must be foreseeable. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). Generally, third-party criminal conduct is a superseding cause unless the conduct is a foreseeable consequence of such negligence. *See Nixon,* 690 S.W.2d at 550; *see also Phan Son Van v. Pena,* 990 S.W.2d 751, 753 (Tex.1999). Courts consider the following factors in determining whether an intervening force rises to the level of a superseding cause:

(1) the fact that the intervening force brings about harm different in kind from

---

1. It appears from the record that Doe's mother's affidavit was not timely filed, and the trial court did not consider it or grant Doe leave to file late summary-judgment evidence. Nevertheless, we conclude the affidavit does not constitute evidence sufficient to avoid summary judgment.

2. Specifically, the plaintiff must show (1) the defendant undertook to perform services that he knew or should have known were neces-

sary for the plaintiff's protection, (2) the defendant failed to exercise reasonable care in performing those services, and either (3) the plaintiff relied upon the defendant's performance, or (4) the defendant's performance increased the plaintiff's risk of harm. *Pugh v. General Terrazzo Supplies, Inc.,* 243 S.W.3d 84, 94 (Tex.App.-Houston [1st Dist.] 2007, pet. denied).

that which would otherwise have resulted from the actor's negligence;

(2) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;

(3) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(4) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(5) the fact that the intervening force is due to an act of a third person that is wrongful toward the other and as such subjects the third person to liability to him;

(6) the degree of culpability of a wrongful act of a third person that sets the intervening force in motion.

*See Pena,* 990 S.W.2d at 754 (citations omitted). The first three factors are particularly important. *See id.* at 754–56; *Becerra v. Sw. Bell Tel. Co.,* No. 14–10–00536–CV, 2011 WL 1744201, at *5 (Tex. App.-Houston [14th Dist.] May 5, 2011, no pet.) (mem. op.).

**2. Relevant summary-judgment evidence**

▇ Doe presented evidence that Messina's sons frequently stayed at the guest house and Messina did not have a practice of monitoring them during such stays. Doe argued Messina knew or should have known the teenagers were consuming alcohol and drugs; she presented the following testimony from Messina's deposition to support this contention:

[Questioner:] [D]id you believe or expect or understand that your sons and their guests might be drinking alcohol in the guesthouse?

. . .

[Messina:] The answer is no.

[Questioner:] Why is that?

[Messina:] Because it's—it's against my—it was against my rules of having alcohol in that house for underaged people.

[Questioner:] Did you drink when you were underage[?]

[Messina:] I'm sorry. I don't know why I should answer that question. Did you drink when you were underage?

[Questioner:] Absolutely.

[Messina:] Okay.

[Questioner:] And that's the reason I expect that you did too.

[Messina:] And I did too.

. . .

[Questioner:] I mean, [underage drinking is] just something that happens, isn't it?

[Messina:] It's something that just happens.

[Questioner:] Okay. And would it surprise you if [Nicholas], Christopher, Louis, and others that were at the guesthouse drank when they were at the guesthouse, drank alcohol when they were at the guesthouse?

[Messina:] It wouldn't shock me.

[Questioner:] Okay. Would it shock you if there was a keg of beer at the guesthouse when they were there?

[Messina:] They would be very ballsy to have a keg of beer that I could see.

[Questioner:] Would it shock you that there were beverages—alcoholic distilled beverages that were being drank in shot glasses?

[Messina:] I would be disappointed.

[Questioner:] What about drugs?

[Messina:] I would be really disappointed.

[Questioner:] What about [ecstasy], have you ever heard of that?

[Messina:] I've heard of it.

[Questioner:] Okay. Do you know what it is?

[Messina:] I don't know exactly what it is.

[Questioner:] Do you know if your sons have ever taken [ecstasy]?

[Messina:] Not to my knowledge.

[Questioner:] What about marijuana? Do you—Are you aware that that has been smoked at the guesthouse?

[Messina:] No.

[Questioner:] This is the first time you're hearing about that?

[Messina:] That my son smoked—

[Questioner:] Yes.

[Messina:]—marijuana at the guesthouse?

[Questioner:] Yes.

[Messina:] Yes.

[Questioner:] Same question with regard to [ecstasy]. Is this the first time you're hearing that your sons had taken [ecstasy] at the guesthouse?

. . .

[Messina:] Only through the process of—since the incident—the alleged incident took place, I've heard that.

Doe also presented another portion of Messina's deposition in which he opined that a girl under eighteen-years old should have adult supervision. Accordingly, Doe contends the sexual assault was foreseeable because appellees failed to supervise and control the teenagers when appellees knew or should have known the teenagers were consuming alcohol and drugs.

### 3. Application of law to facts

We begin by addressing Doe's contention that the evidence establishes appellees knew or should have known the teenagers were consuming alcohol and drugs. We assume, without deciding, that the evidence supports an inference Messina should have known the teenagers were consuming alcohol because he admitted he would not be "shocked" by this fact. However, we determine the evidence does not support a reasonable inference that appellees should have known about the drug use; Messina merely testified he would be "really disappointed" if the teenagers were using drugs at the guest house. Thus, we will determine whether Doe's sexual assault was the foreseeable consequence of appellees' alleged failure to supervise a group of teenagers who were consuming alcohol.

### a. *Pena* factors one through three: whether criminal act was ordinary consequence of plaintiff's negligence

Under the circumstances, we determine sexual assault was not an ordinary consequence of appellees' alleged negligence. *See Pena*, 990 S.W.2d at 754 (factors one through three). Criminal misconduct is sometimes foreseeable because of immediately preceding conduct or a history of criminal activity in an area. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767–69 (Tex.2010); *see also Cain v. Cain*, 870 S.W.2d 676, 680–81 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (concluding third-party's sexual assault of minor was reasonably foreseeable consequence of defendant's failure to supervise minor because defendant knew third-party had conviction for sexual assault of child but allowed third-party and plaintiff to consume alcohol together). However, Doe presented no evidence that any of the teenagers, including Kervin, had ever committed or attempted to commit sexual assault. At most, Messina testified during

his deposition that he did not "particularly care for" Kervin; however, Messina did not disclose the basis for this opinion. Without evidence that Kervin had previously engaged in similar actions, Doe had the burden of establishing the sexual assault was an ordinary consequence of unsupervised teenage drinking.

Although allowing the teenagers to consume alcohol without adult supervision might have had various foreseeable consequences (such as arguments, promiscuity, horseplay, etc.), the egregious, felonious crime of sexual assault was an *extraordinary* consequence.[3] *See, e.g., Pena,* 990 S.W.2d at 755 ("The violent sexual assaults and murders committed by the gang members when the girls, by chance, stumbled upon their initiation ritual were certainly an 'extraordinary' rather than 'normal' consequence of [defendant's] alleged illegal sale of alcohol."); *McArdle v. Stahl,* No. 03–04–00817–CV, 2006 WL 1648988, at *3–5 (Tex.App.-Austin June 15, 2006 no pet.) (mem. op.) (concluding violent assault which resulted in death not ordinary consequence of teenage drinking party, even though third-party attacker had history of violence) (mem. op.); *Boggs v. Bottomless Pit Cooking Team,* 25 S.W.3d 818, 820 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (concluding murder was not ordinary consequence of selling alcohol to obviously intoxicated person); *Cowart v. Kmart Corp.,* 20 S.W.3d 779, 784–86 (Tex.App.-Dallas 2000, pet. denied) (concluding murder committed by third-party was not foreseeable result of ammunition sale to minor); *Donnell v. Spring Sports, Inc.,* 920 S.W.2d 378, 384–85 (Tex.App.-Houston [1st Dist.] 1996, writ denied) (concluding violent fight resulting in serious bodily injury to plaintiff was extraordinary consequence of defendant's failure to provide security at softball fields where players consumed alcohol and had reputation for aggressive confrontations); *see also Freeman v. Busch,* 150 F.Supp.2d 995, 1003 (S.D.Iowa 2001) (concluding defendant's negligence, if any, in allowing incapacitated woman to remain in dormitory room with males was not a proximate cause of the sexual assault).

Here, Messina's admission that a girl under eighteen-years old needs adult supervision is not evidence that supports an inference the sexual assault was foreseeable. Furthermore, in her affidavit, Doe's mother averred she asked Messina whether Doe *and* Nicholas were welcome to stay at the guest house, and Messina assured her they were welcome. The presence of Doe's eighteen-year-old brother further negates her contention that appellees should have foreseen their failure to supervise the teenagers would result in a sexual assault of Doe.[4] "Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury." *Doe,* 907 S.W.2d at 478; *see also Barton v. Whataburger, Inc.,* 276 S.W.3d 456, 470 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) ("[F]oreseeability requires more than 'afford[ing] an opportunity' to commit a crime." (citation omitted)).

---

**3.** We hold Kervin's acts in placing his hand inside Doe's vagina and in engaging in sexual intercourse with her are both extraordinary consequences of appellees' alleged negligence. *See* Tex. Penal Code § 22.011 (West 2011) (defining sexual assault).

**4.** The fact that Nicholas was not present at the guest house when the sexual assault occurred (but was sleeping at the main house) is irrelevant. Nothing indicates Messina was aware Nicholas left the guest house. In fact, the evidence establishes Messina was surprised and angered when he discovered Nicholas in the main house.

In her response to appellees' motion for summary judgment, Doe presented a sociological study in which researchers found that "the most common rape-risk situation for both adult women and college women is . . . being taken advantage of by a sexual predator after [the woman] has become intoxicated voluntarily."[5] Researchers also found "that alcohol is, by far, the most frequently involved substance" when a woman is sexually assaulted after being rendered incapacitated. However, these findings do not suggest that sexual assault is an ordinary consequence of all unsupervised teenage drinking, particularly when the victim's intoxication is not a factor in the assault. *See Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 157 n. 18, 42 Cal.Rptr.3d 519 (declining to take judicial notice of studies regarding the link between alcohol consumption and sexual assault, in part because "even accepting that many rapes are associated with alcohol abuse or that alcohol abuse increases the chance of rape, that does not make rape likely in any particular situation involving alcohol."). Doe testified that she awakened during the sexual assault, but did not try to prevent the assault because she was scared and "didn't know what to do"; she did not testify the assault occurred because she was intoxicated and unable to prevent the attack. Accordingly, the study does not create a fact issue regarding foreseeability of the assault. We hold that the first three factors of the test for determining superseding cause are satisfied.

### b. *Pena* factors four through six: the third-party's criminal act

Applying the final three *Pena* factors to our facts, it is clear Kervin's actions were a superseding cause of Doe's injury: (1) Kervin's committed the sexual assault; (2) this action subjected Kervin to civil liability to Doe as well as a felony indictment; and (3) Kervin, who was nineteen-years old, was highly culpable for committing the sexual assault. *See Pena*, 990 S.W.2d at 754 (prongs four through six). Accordingly, Doe failed to raise a fact issue regarding whether appellees' negligence proximately caused the sexual assault.[6] We hold the trial court properly granted summary judgment in favor of appellees on Doe's ordinary-negligence claim. *See Urena*, 162 S.W.3d at 550.

### C. Gross Negligence

We next address whether the trial court erred by granting summary judgment in favor of appellees on Doe's gross-negligence claim. In their motion for summary judgment, appellees noted that a finding of ordinary negligence is prerequisite to a finding of gross negligence. *See Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 395 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). Based on this law, appellees argued that judgment should be granted on Doe's gross-negligence claim if judgment is granted on her ordinary-negligence claim. We agree. Therefore, having upheld the trial court's judgment Doe's ordinary-negligence claim, we hold the trial court properly granted summary judgment in favor of appellees on Doe's gross-negligence claim. *See Urena*, 162 S.W.3d at 550.

### D. Premises Liability

■ Finally, we address whether the trial court erred by granting summary

---

5. Dean G. Kilpatrick, Ph.D., et al., Drug-facilitated, Incapacitated, and Forcible Rape: A National Study (2007).

6. Having upheld the summary judgment on the element of proximate cause, we need not and do not consider whether appellees owed a legal duty to Doe.

judgment in favor of appellees on Doe's premises-liability claim. In their motion for summary, appellees challenged Doe's premises-liability claim by arguing, among other grounds, that there is no evidence a dangerous condition existed on the premises of which defendants had actual or constructive awareness.

One of the elements of a premises-liability claim is the existence of a premises condition posing an unreasonable risk of harm. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex.2006). A condition poses an unreasonable risk of harm when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex.2002). We have already determined that a reasonably prudent person would not have foreseen that Doe would be sexually assaulted if the teenagers were not supervised. Accordingly, we hold the trial court properly granted summary judgment in favor of appellees on Doe's premises-liability claim because she failed to present evidence raising a fact issue on an essential element of the claim. *See Urena*, 162 S.W.3d at 550. Doe's sole issue is overruled.

We affirm the trial court's judgment.